Exhibit 1

# Supreme Court of Pennsylvania
## Court of Common Pleas
## Civil Cover Sheet

_____ CAMBRIA _____ **County**

| For Prothonotary Use Only: | Prothonotary Cambria Co, PA, FILED AUG 15 '25 AM 10:28 STAMP |
|---|---|
| Docket No: **2025-3625** | |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**SECTION A**

**Commencement of Action:**
- ☒ Complaint
- ☐ Writ of Summons
- ☐ Transfer from Another Jurisdiction
- ☐ Petition
- ☐ Declaration of Taking

| Lead Plaintiff's Name: | Lead Defendant's Name: |
|---|---|
| GARRETT BOWDEN | EXPRESS SCRIPTS, INC. |

| Are money damages requested? ☒ Yes ☐ No | Dollar Amount Requested: (check one) | ☐ within arbitration limits ☒ outside arbitration limits |
|---|---|---|

| Is this a *Class Action Suit*? ☒ Yes ☐ No | Is this an *MDJ Appeal*? ☐ Yes ☒ No |
|---|---|

Name of Plaintiff/Appellant's Attorney: Matthew J. Scanlon, Esq.

☐ **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**SECTION B**

**TORT** (*do not include Mass Tort*)
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability (*does not include mass tort*)
- ☐ Slander/Libel/ Defamation
- ☒ Other: UTPCPL

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other: _____

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional: _____

**CONTRACT** (*do not include Judgments*)
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other
  _____
  _____
- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other
  _____
  _____
- ☐ Other: _____

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other: _____

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other
  _____
  _____
- ☐ Zoning Board
- ☐ Other: _____

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☒ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other: _____

*Updated 1/1/2011*

IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA

GARRETT BOWDEN, individually and on behalf of all others similarly situated, i.e., "the CLASS", pursuant to 231 Pa. Code Sections 1702-1704,

Plaintiffs,

v.

EXPRESS SCRIPTS, INC., CIGNA CORPORATION, EVERNORTH HEALTH SERVICES, UPMC HEALTH PLAN, HIGHMARK INC., and JOHN DOES 1–10,

Defendants.

CIVIL ACTION – CLASS ACTION

DOCKET NO: 2025-_3625_

## CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Counsel of Record for Class Plaintiffs:

Matthew J. Scanlon, Esquire
PA I.D. #307209
matt@swlegalteam.com
Timothy Grant Wojton, Esquire
PA I.D. #307894
tim@swlegalteam.com

SCANLON & WOJTON, LLC
304 Ross Street, 2nd Floor
Pittsburgh, PA 15219
412-918-1241 – office
412-235-7275 – fax

## JURY TRIAL DEMANDED

## NOTICE TO DEFEND

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take prompt action within twenty (20) days after this Complaint is served, by entering a written appearance or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that, if you fail to do so, the case may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

You should take this paper to your lawyer at once. If you do not have a lawyer, or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.

Laurel Legal Services, Inc.
227 Franklin Street, Suite 400
Johnstown, PA 15901
814-536-8917 (office)
814-535-3377 (fax)

# I. INTRODUCTION

1. This class action is brought by clients and/or patients of Martella's Pharmacies — a critical healthcare provider in Cambria County and surrounding areas which include Martella's Pharmacy in Johnstown, Martella's Pharmacy of Windber, Martella's Pharmacy of Parkhill, Boswell Prescription Center, Ligonier Pharmacy, and Penn Laurel Pharmacy — who face imminent loss of access to their medications and pharmacy services due to the Defendants' decision to terminate Martella's from their provider networks.

2. Defendants, led by Express Scripts, Inc., and acting in coordination with UPMC Health Plan and Highmark Inc., have announced their intent to remove Martella's Pharmacies as an in-network provider on or about August 15, 2025, without offering adequate alternative access to care, nor a means or path for Martella's to remain "in-network".

3. Martella's operates six community-based retail pharmacy locations and provides: Home delivery for the elderly and disabled; Medi-Pac adherence packaging that pre-sorts medication by dose, day, and time; and comprehensive pharmacy services for long-term care homes.

4. The termination of Martella's from the network will cause immediate, widespread harm to elderly, disabled, and medically fragile patients — many of whom are unable to travel, manage complicated medication regimens, or find comparable alternatives.

5. This harm is exacerbated by the bankruptcy and closure of eight Rite Aid pharmacy locations in Cambria County, many within recent months, many as recent as May 2025. These closures have already overwhelmed remaining pharmacies and left the region medically fragile.

6. Plaintiffs seek an emergency injunction and damages to prevent further harm to public health and restore access to life-sustaining care.

# II. JURISDICTION AND VENUE

7. Jurisdiction is proper under the laws of the Commonwealth of Pennsylvania. Venue is proper in this Court pursuant to Pa. R.C.P. 1006 because the events giving rise to these claims occurred in Cambria County, where Plaintiffs reside and received services.

# III. PARTIES

8. Plaintiff, Garrett Bowden, is an adult resident of Cambria County, Pennsylvania, insured by UPMC Health Plan and a long-time patient of Martella's Pharmacies, specifically at Windber.

   a. There are currently, as of August 13, 2025, over 135 plaintiffs who have retained the underlying counselor's law firm to take part in this class action suit,

thus satisfying the requirements of Rule 1702, i.e., the class is so numerous that joinder of all members is impracticable, there are questions of law or fact common to the class, the claims or defenses of the representative parties are typical of the claims or defenses of the class, the representative parties will fairly and adequately assert and protect the interests of the class, and, a class action provides a fair and efficient method for adjudication of the controversy. *See 231 Pa. Code Section 1702.*

9. Defendant Express Scripts, Inc. is a pharmacy benefit manager (PBM) organized in Missouri and licensed in Pennsylvania. It administers pharmacy benefits for health plans including UPMC and Highmark.

10. Defendant Cigna Corporation is a multinational health services company and parent of Express Scripts.

11. Defendant Evernorth Health Services is a Cigna subsidiary that manages PBM and health plan services, including Express Scripts operations.

12. Defendant UPMC Health Plan is a Pennsylvania nonprofit health insurance provider that contracts with Express Scripts for pharmacy benefits.

13. Defendant Highmark Inc. is a Pennsylvania-based health insurer also contracting with Express Scripts and/or Evernorth for PBM services.

14. Defendants John Does 1–10 are unknown persons or entities responsible for or involved in the decision to remove Martella's from the provider networks.

## IV. CLASS ACTION ALLEGATIONS

15. Plaintiffs bring this action on behalf of themselves, and all others similarly situated, defined as: All individuals residing in Pennsylvania who, as of August 2025, are patients of Martella's Pharmacies and are enrolled in a health plan administered by UPMC Health Plan or Highmark Inc. using Express Scripts or Evernorth as the pharmacy benefit manager.

16. The class is so numerous that joinder is impracticable. Plaintiffs estimate thousands of affected individuals will come forward to join the Class suit.

17. There are common questions of law and fact, including: Whether the removal of Martella's violates patient rights or public policy; Whether patients were given adequate notice or alternatives; Whether the removal creates pharmacy deserts and increases medical risk; Whether the removal will overrun an already exhausted rural hospital system.

18. Plaintiffs' claims are typical of the class. They and other class members rely on Martella's for consistent access to life-sustaining medications through Martella's retail locations, at-home delivery services, and long-term care facility services.

19. Plaintiffs will fairly and adequately represent the class. They seek the same relief as all similarly situated patients.

## V. FACTUAL ALLEGATIONS

20. Martella's Pharmacies operates six physical pharmacy locations serving thousands of residents across Cambria County and nearby communities.

21. The pharmacies also provide: Home delivery; Medi-Pac adherence packaging; Long-term care pharmacy services.

22. Many Martella's patients are elderly, disabled, and/or managing chronic illness. Their ability to live independently often depends on Martella's systems and services.

23. On or about August 15, 2025, Defendants plan to terminate Martella's from their pharmacy networks, meaning patients using UPMC or Highmark coverage will be unable to fill prescriptions there, or received home delivery of their medications.

24. No meaningful alternatives exist for most patients — particularly those without transportation, caregivers, or digital access to manage mail-order systems.

25. The closure of eight Rite Aid locations in Cambria County has already flooded local pharmacies. There is no available capacity to absorb the patients displaced by Martella's termination.

26. Defendants have offered no justification to patients and have made no accommodations to preserve access for those most vulnerable.

27. Without intervention, Plaintiffs and the Class will suffer irreversible harm and possible death.

28. The removal of Martella's Pharmacies from the provider network will lead to medication non-adherence, especially among elderly patients with complex regimens, limited mobility, or cognitive impairments.

29. This will result in increased emergency department visits, hospital admissions, and adverse health events, further burdening a rural healthcare system that is already overrun, understaffed, and operating near capacity.

30. Local hospitals and emergency services in Cambria County and the surrounding areas cannot safely absorb a sudden influx of avoidable medical crises caused by this pharmacy access disruption.

31. PBM's administer pharmacy benefit management services on behalf of clients. These clients are known as payers, and include employers, health insurer plans, labor unions, employer coalitions and government entities.

32. PBM's provide various services to these payers including development drug formularies, creating and managing networks of pharmacies, processing prescription drug claims, reporting drug expenditures, creating and administering clinical programs, and negotiating with pharmaceutical manufacturers for rebates on behalf of their clients.

33. PBM's began providing claims processing and administrative services for health insurers over 60 years ago and have become concentrated to a few companies, including Defendant, Express Scripts, Inc.

34. PBM's are integrated within large health care conglomerates, including UPMC Health Plan and Highmark, which allows PBM's such as Express Scripts, Inc. to leverage power along every link within the pharmaceutical supply chain.

35. PBM's like ESI exert tremendous influence over drug ricing and purchasing decisions, greatly affecting the bottom-line out of pocket drug price to the patient, including Plaintiffs herein.

36. The financial toll affecting patients, including Plaintiffs herein, is experienced mainly as a result of drug price fixing and collusion between PBM's and larger health plans, not unlike Defendants named in this matter.

37. A typical prescription drug transaction in the United States involves at least five and as many as eight different parties, many of which are invisible to the patient attempting to fill a prescription.

38. The process begins when a doctor or similarly enabled medical professional, i.e., nurse practitioner, physician assistant, writes a prescription for a patient and send the prescription to the patient's pharmacy. Almost all prescriptions are sent through a system, a network, maintained electronically by a third party. Both doctors' offices and pharmacies can access this network. Once the pharmacy receives the patients' prescriptions, it submits a claim for the price to be paid by the patients' insurance provider. The claim does not go directly to the insurance company but to the PBM that the insurance company has contracted with, i.e., UPMC Health Plan and Highmark have contracts with Express Scripts, Inc. to manage prescription benefits on behalf of patients insured by UPMC Health Plan and Highmark. The PBM pays the pharmacy based upon unpredictable and

nebulous reimbursement calculations based upon numerous factors, including, contracts between the health plans and the PBM's, between PBM's and pharmacies or pharmacy services administrative organizations which contract with PBM's on behalf of small or independent pharmacies, between pharmacies and drug wholesalers or manufacturers, and between health plans and their beneficiaries. The PBM then collects reimbursement from the insurance company based upon a separate price list that it has negotiated with that insurance provider.

39. PBM Defendants are vertically integrated, meaning, they own or are owned by entities that participate at different levels or points in the supply chain for prescription drugs, and thus, control the market unfairly, often leading to unregulated price fixing, profit-gouging and unfair competition by setting a market which cuts out smaller pharmacies, like Martella's. Decades of intense market consolidation has provided PBM's, not unlike Express Scripts, Inc., with vast market power over independent pharmacies, non-affiliated insurance providers, other market participants, and the customer, i.e., the patients, whose health care and prescription drug provisions, they control.

40. For instance, none of the patients, i.e., the Plaintiffs in this Class, were ever notified that their prescriptions would be moving to Giant Eagle, CVS, or other large retail pharmacies, or, provided a choice in the matter.

41. PBM's receive a large source of their revenue from "spread pricing". This occurs where a PBM charges the insurance company a higher (sometimes significantly higher) rate for certain drugs than it paid to the pharmacy. Due to the opacity of the PBM's pricing mechanisms, pharmacies like Martella's do not know where spread pricing is occurring. As "spread pricing" became a source of public knowledge, and infuriation, rightfully so, PBM's turned to an alternate revenue source - - "specialty drugs", high-cost prescription medications used to treat often complex medical problems, including conditions like cancer, arthritis, multiple sclerosis, etc. Many of these medications require special handling and administration to patients, e.g., injection intravenously or arterial infusion.

42. The prevalence of specialty drugs led to the creation of specialty pharmacies. Each of the six largest PBM's operates its own affiliated specialty pharmacy, accounting for over 66% of the specialty drug dispensing revenue. This is further evidence of collusion and drug-price fixing.

43. Due to the potentiality of incredibly high profits, the majority of new drugs being developed by large pharmaceutical companies and brought to market are intended to be marketed and sold as specialty drugs; by forcing or incentivizing their plan members to purchase specialty drugs from the PBM's specialty pharmacies they own and collect reimbursement for the full price of specialty pharmaceuticals from health plans.

44. PBM's also utilize prescription discount cards to harness increased market power and control, exerting influence and further unfairly competing with smaller pharmacies. PBM's have created discount programs and negotiated prices with pharmacies, then worked with marketing companies to promote and advertise the discount cards to patients directly. Pharmacies chose to honor certain cards as a means of building patient loyalty and increasing business traffic into the pharmacy.

45. Now, PBM's, including Defendants herein, and health plans, inclusive of named Defendants herein, are colluding and unfairly competing to exclude smaller pharmacies by refusing to contract with said smaller pharmacies, driving up the costs of prescription medications for small pharmacies and their clientele, i.e., the patients ("Plaintiffs") herein. PBM's have done this by making the acceptance of their entire collection of discount cards a condition of the network agreements pharmacies, which are forced to sign to fill prescriptions covered by the PBM's, even though it often means the smaller pharmacy will lose money on a significant proportion of those transactions.

46. In the event there is any pushback or disagreement between the smaller pharmacies and the PBM's, the PBM's simply decide to terminate the contractual relationship with said pharmacies and move all prescriptions for patients, i.e., the Plaintiffs herein, without prior knowledge or consent by patients, to large, compliant, colluding pharmacies, including Giant Eagle and CVS.

47. The result of these "partnerships" between Express Scripts, Inc. and other named Defendants herein amounts to price fixing agreements that enable PBM's to allocate discount card transactions amongst one another in real time, ensuring that PBM's pay the lowest possible reimbursement rates to pharmacies on every transaction. The partnerships dramatically increase the portion of prescriptions processed through discount cards, instead of processing through regular insurance transactions, thus targeting and attacking a stream of revenue upon which independent pharmacies rely for their financial stability and survival. This ultimately negatively impacts and effects the patients who can no longer afford to use their hometown pharmacy; a pharmacy that has been directly cut out of competition, as aforesaid, or, basically forced out through unfair competition based upon the models described above.

48. The brunt of the harm caused by the PBM's anticompetitive conduct is borne by independent pharmacies, not unlike Martella's, which when bleeds down to the patients, the Plaintiffs herein. Small pharmacies often do not even understand the complex financial arrangements that determine the reimbursement rate paid to them by PBM's. The reimbursement rates pharmacies receive are set by PBM's with their health insurer clients.

49. Plaintiffs bring this action on behalf of themselves and all other similarly situated as a class action under 231 Pa. Code Sections 1702-1704. Plaintiffs do not know the exact number of Class members because such information is presently in the exclusive control of Defendants. Plaintiffs believe, and therefore aver, that, at a minimum, the Class participants would exceed thousands of Class members in the Commonwealth.

50. Plaintiffs are seeking damages, described more fully below, including all equitable and injunctive relief, on behalf of the class.

### COUNT I
### VIOLATION OF THE PA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW ("UTPCPL")
*All Plaintiffs v. All Defendants*

51. Plaintiffs repeat the allegations set forth above as if the same were set forth at length herein.

52. The Defendants named herein are engaging in unfair methods of competition and unfair and/or deceptive acts or practices, including, fixing pharmacy payments through collusion in order to secure a market for Giant Eagle Pharmacy, CVS, and other, larger, retail pharmacies, while foreclosing business opportunities for Martella's Pharmacy locations.

53. The UTPCPL prohibits "any person" from employing "[u]nfair methods of competition" and "unfair or deceptive acts or practices," which are defined to include, inter alia, the following conduct:

- Causing likelihood of confusion or of misunderstanding as the source, sponsorship, approval or certification of goods or services. 73 P.S. §201-2(4)(ii);

- Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another. 73 P.S. §201-2(4)(iii);

- Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have. 73 P.S. § 201-2 (4)(v);

- Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style of model, if they are of another. 73 P.S. §201-2(4)(vi);

- Disparaging the goods, services or business of another by false or misleading representation of fact. 73 P.S. §201-2(4)(viii);

- Advertising goods or services with intent not to sell them as advertised. 73 P.S. §201-2(4)(ix);

- Advertising goods or services with intent not to supply reasonable expected public demand unless the advertisement discloses a limitation of quantity. 73 P.S. §201-2(4)(x);

- Making false or misleading statements of fact concerning the reasons for, existence of or amounts of price reductions. 73 P.S. § 201-2(4)(xi).

- Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made. 73 P.S. §201-2(4)(xiv);

- Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding. 73 P.S. § 201-2 (4)(xxi).

54. Each Defendant is a "person" within the meaning of the UTPCPL, 73 P.S. Sections 201-202(11).

55. The Defendants have engaged in unfair and deceptive practices by quietly and discreetly removing a compliant in-network pharmacy from coverage, causing patients to lose access to needed medication and services, without any advanced notice, discussion or provision of alternative methods and means to meet their immediate, short-term, near-term and long-term needs.

56. The Plaintiffs justifiably relied on the Defendants' deception since, upon their information, knowledge and belief, their health insurance and pharmaceutical coverage identified Martella's as an "in-network" provider of medication.

57. Upon information and belief, the Plaintiffs aver that Express Scripts and its parent companies, acting in concert with UPMC Health Plan and Highmark, Inc., made these affirmative representations.

58. The Plaintiffs came to rely upon the provision of medically necessary products and services, at prices they can afford, including Medi-Pacs and free deliveries for those less able to drive or travel significant distances.

59. The Defendants' decision to drop Martella's was deceptive because:

   a. it was not clearly disclosed to patients, creating confusion about continued access;
   b. it was intended to steer patients to PBM-affiliated pharmacies (e.g., mail-order or chain pharmacies) for profit, without regard to patient harm;
   c. contradicted prior representations about network access, undermining patient expectations.

60. Defendants are independently liable for their own misconduct in violation of the UTPCPL and are liable for their collective efforts in furtherance of the pricing scheme explained above. Using a complex structure of interdependent entities, Defendants confused and misled consumers about each Defendant's respective role in an attempt to evade liability for the unfair and deceptive scheme as a whole, and for the acts and omissions of the enterprises' interdependent participants.

61. Defendants have historically, in violation of the UTPCPL, steered patients, Plaintiffs herein, away independent pharmacies, such as Martella's, instead, controlling pricing to freeze independent pharmacies out of competition, which causes the patients, i.e., Plaintiffs herein, to suffer the adverse effects. To put it simply, when Express Scripts, Inc., Defendant, ousts Martella's as an in-network pharmacy partner for Highmark and UPMC Health Plan, thousands of patients, including those identified as Plaintiffs in this Class suit, would no longer be able to afford to use Martella's services, should Martella's avoid closure, and instead, are automatically steered toward pharmacies that Express Scripts, Inc., chooses, including its own specialty pharmacy.

62. The above creates a strain on emergency services already spread thin in Cambria County, which then in turn creates a void of emergency services care provided to the people of Cambria County, leading to the probability of a mass public health crisis where people aren't taking their medications and/or correct dosages, creating greater sickness, yet without enough emergency medicine services support to respond, leading to increased harm for patients, i.e., putative Class participants.

63. Similarly, although Pennsylvania does not have its own "anti-trust act," Pennsylvania's UTPCPL operates as a serviceable substitute, since contracts, combinations, or conspiracies in restraint of trade or commerce in the Commonwealth, mirroring the Federal Sherman Antitrust Act, are arguably "deceptive" in nature and pursue for the illicit purpose of increasing the bad actors' profits at the expense of end-consumers.

64. Defendants, through their coordinated actions, have engaged in a contract, combination, or conspiracy to unreasonably restrain trade in the market for pharmacy services and prescription drug dispensing in Cambria County and surrounding areas.

65. Specifically, the PBM Defendants (Express Scripts, Cigna, Evernorth) and Health Plan Defendants (UPMC Health Plan, Highmark) have conspired to terminate Martella's Pharmacies from their provider networks, effective August 15, 2025, without justification or adequate alternatives. This action is part of a broader scheme to favor PBM-affiliated or large retail pharmacies (e.g., CVS, Giant Eagle) by reducing competition from independent pharmacies like Martella's.

66. Defendants' conduct suppresses competition by:

    a. Reducing Pharmacy Options: The termination of Martella's, combined with the closure of eight Rite Aid locations in Cambria County, significantly reduces the number of pharmacies available to Plaintiffs and Class members, particularly in rural and underserved areas.

    b. Steering Patients to Affiliated Pharmacies: By removing Martella's, Defendants allocate prescription transactions to PBM-affiliated or preferred large pharmacies, increasing their market share and profits at the expense of independent pharmacies and patient choice.

    c. Creating Pharmacy "Deserts": The loss of Martella's exacerbates the lack of pharmacy access in Cambria County, harming competition and forcing patients to rely on Defendants' chosen providers.

67. Defendants' actions have substantial effects on intrastate commerce in Pennsylvania, as they control the majority of pharmacy benefit services and health plan coverage in Cambria County, impacting thousands of patients' access to prescription drugs.

68. As a direct result of Defendants' anticompetitive conduct, Plaintiffs and Class members have suffered antitrust injury, including: a. Loss of access to Martella's Pharmacies, which provide critical services like home delivery, Medi-Pac adherence packaging, and long-term care support. b. Increased costs, such as higher prescription prices at PBM-affiliated pharmacies or travel expenses to distant pharmacies. c. Reduced quality of care, including medication non-adherence due to inaccessible pharmacy services, leading to health risks and increased emergency healthcare costs.

69. Defendants' conduct lacks any legitimate procompetitive justification. Even if such justifications exist, less restrictive means could achieve the same goals without terminating Martella's from the network.

70. Pursuant to 73 P.S. § 201-8, Plaintiffs and Class members are entitled to treble damages for their losses, injunctive relief to restore Martella's in-network status, and reasonable attorneys' fees and costs.

## VIOLATIONS OF THE PA PHARMACY BENEFIT REFORM ACT (Act 77 of 2024)
### *All Plaintiffs v. All Defendants*

71. Plaintiffs repeat and incorporate by reference all allegations set forth above as if fully set forth herein.

72. The Pharmacy Benefit Reform Act (Act 77 of 2024), 40 P.S. §§ 3401-3409, effective October 15, 2024, for pharmacy contracts and January 1, 2026, for individual health plan contracts, regulates pharmacy benefit managers (PBMs) in Pennsylvania to ensure transparency, fairness, and access to pharmacy services for patients enrolled in fully funded health benefit plans.

73. Defendants Express Scripts, Inc., Cigna Corporation, and Evernorth Health Services (collectively, the "PBM Defendants"), as PBMs, and UPMC Health Plan and Highmark Inc. (collectively, the "Health Plan Defendants"), as health insurers contracting with the PBM Defendants, are subject to Act 77's provisions, including prohibitions on patient steering and requirements for network adequacy.

74. Defendants' decision to terminate Martella's Pharmacies from their provider networks, effective August 15, 2025, violates Act 77 by:

    a. Steering Patients to PBM-Affiliated Pharmacies. Act 77 prohibits PBMs from requiring or incentivizing patients to use PBM-owned or affiliated pharmacies through lower co-pays or other benefits (40 P.S. § 3405). Defendants' termination of Martella's, a non-affiliated independent pharmacy, without providing comparable in-network alternatives, effectively steers patients to PBM-affiliated pharmacies such as those owned by Cigna or Express Scripts (e.g., Express Scripts Pharmacy, Inc.) or other large retail pharmacies like CVS or Giant Eagle. This deprives Plaintiffs and Class members of their right to choose their preferred pharmacy, particularly Martella's, which provides critical services like home delivery and Medi-Pac adherence packaging.

    b. Failing to Ensure Network Adequacy. Act 77 requires PBMs to maintain pharmacy networks that provide reasonable access to prescription drugs, including proximity to patients (40 P.S. § 3404). The termination of Martella's six locations in Cambria County, combined with the recent closure of eight Rite Aid pharmacies, creates a "pharmacy desert" in the region, leaving Plaintiffs and Class members—especially elderly, disabled, and medically fragile patients—without accessible pharmacy options. Defendants have failed to demonstrate that remaining in-network

pharmacies can absorb Martella's patients or provide equivalent services, violating Act 77's network adequacy requirements.

75. Defendants' actions are particularly harmful because they did not provide Plaintiffs and Class members with adequate notice or alternative access to pharmacy services, as required by Act 77's transparency and fairness mandates. Many Class members rely on Martella's for specialized services unavailable at other pharmacies, such as home delivery for the elderly and disabled or Medi-Pac packaging for complex medication regimens.

76. As a direct result of Defendants' violations of Act 77, Plaintiffs and Class members have suffered and will continue to suffer harm, including loss of access to life-sustaining medications, increased travel costs to distant pharmacies, medication non-adherence leading to health risks, and increased strain on Cambria County's already overburdened healthcare system.

77. Although Act 77 primarily provides for enforcement by the Pennsylvania Insurance Department (PID), Defendants' violations support Plaintiffs' claims under the UTPCPL by demonstrating unfair and deceptive conduct, as Act 77 establishes a public policy standard for PBM behavior. Plaintiffs seek injunctive relief to restore Martella's in-network status and prevent further violations, as well as damages for harms caused by Defendants' non-compliance.

## COUNT III
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
### All Plaintiffs v. All Defendants

78. Plaintiffs repeat and incorporate by reference all allegations set forth above as if fully set forth herein.

79. Plaintiffs and Class members have established business relationships with Martella's Pharmacies for the provision of prescription drugs and pharmacy services, including home delivery, Medi-Pac adherence packaging, and long-term care support.

80. Defendants were aware of these business relationships, as Martella's has been an in-network provider for UPMC Health Plan and Highmark, managed by Express Scripts and Evernorth, serving thousands of patients in Cambria County.

81. Defendants intentionally and wrongfully interfered with these business relationships by terminating Martella's from their provider networks, effective August 15, 2025, without justification or adequate patient notice, and without providing comparable alternative pharmacy services.

82. Defendants' actions were motivated by an improper purpose, namely, to reduce competition from independent pharmacies, increase market share for PBM-affiliated or large retail pharmacies, and maximize profits through higher reimbursements or fees from preferred providers.

83. As a direct result of Defendants' tortious interference, Plaintiffs and Class members have suffered harm, including:

   a. Loss of access to Martella's specialized pharmacy services, critical for elderly, disabled, and medically fragile patients.

   b. Increased financial burdens, such as higher prescription costs or travel expenses to distant pharmacies.

   c. Health risks from medication non-adherence, exacerbated by the lack of equivalent services and the region's pharmacy desert.

84. Defendants' conduct was willful and malicious, entitling Plaintiffs and Class members to compensatory and punitive damages, as well as injunctive relief to restore Martella's in-network status.

### COUNT IV
### INJUNCTIVE RELIEF
### *All Plaintiffs v. All Defendants*

85. Plaintiffs repeat and incorporate by reference all allegations set forth above as if fully set forth herein.

86. Defendants' termination of Martella's Pharmacies from their provider networks, which the Plaintiffs believe will become **effective August 18, 2025**, poses an imminent threat to public health in Cambria County and surrounding areas.

87. The loss of Martella's six pharmacy locations, combined with the recent closure of eight Rite Aid pharmacies, creates a severe shortage of pharmacy services, particularly for elderly, disabled, and medically fragile patients who rely on Martella's for home delivery, Medi-Pac adherence packaging, and long-term care support.

88. This shortage will lead to medication non-adherence, increased emergency department visits, hospital admissions, and adverse health outcomes, placing an unsustainable burden on Cambria County's already strained rural healthcare system.

89. Plaintiffs and Class members face irreparable harm, including potential loss of life, without immediate injunctive relief to maintain Martella's in-network status and ensure continued access to pharmacy services.

90. The balance of equities favors Plaintiffs, as Defendants have offered no justification for terminating Martella's and have failed to provide adequate alternatives. The public interest demands preserving access to life-sustaining medications and preventing a public health crisis.

91. Pursuant to Pa. R.C.P. 1531, Plaintiffs seek a preliminary and permanent injunction requiring Defendants to reinstate Martella's Pharmacies as an in-network provider and to refrain from actions that further limit pharmacy access in Cambria County.

**WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court:**

A. Certify this action as a class action under Pa. R.C.P. 1702-1704, appoint Plaintiff Garrett Bowden as Class Representative, and appoint Plaintiffs' counsel as Class Counsel.

 B. Declare that Defendants' termination of Martella's Pharmacies from their provider networks violates the Pennsylvania Unfair Trade Practices and Consumer Protection Law (73 P.S. §§ 201-1 to 201-9.3), the Pharmacy Benefit Reform Act (40 P.S. §§ 3401-3409), and the Pennsylvania Antitrust Law codified at 73 P.S. §§ 201-1 to 201-9.1.

C. Enjoin Defendants from terminating Martella's Pharmacies from their provider networks and from engaging in further unfair, deceptive, or anticompetitive practices that limit patient access to pharmacy services, pursuant to Pa. R.C.P. 1531 and 73 P.S. § 201-4.

D. Award Plaintiffs and Class members compensatory damages for losses caused by Defendants' actions, including but not limited to increased prescription costs, travel expenses, and health-related harms due to medication non-adherence.

E. Award treble damages under 73 P.S. § 201-8 (UTPCPL) and 73 P.S. § 201-8 (Antitrust Act) for Defendants' willful violations, and punitive damages for tortious interference where appropriate.

F. Award reasonable attorneys' fees, costs, and pre- and post-judgment interest as permitted by law.

G. Grant such other and further relief Ascertainable Loss: As alleged, the Defendants' actions have caused and will continue to cause ascertainable losses to the Plaintiffs and the Class, including but not limited to increased costs for prescription medications, travel expenses to access alternative pharmacies, and health-related harms due to medication non-adherence.

H. The exact amount of these losses will be determined through discovery and expert analysis, but the Defendants' actions have directly resulted in financial and health-related injuries to the Plaintiffs and the Class.

I. The Defendants' termination of Martella's Pharmacies constitutes an unfair and deceptive act under the UTPCPL, as it misrepresents the availability of pharmacy services and creates a likelihood of confusion or misunderstanding among patients regarding their access to care.

J. The Defendants' actions also violate the spirit and letter of Act 77 by failing to ensure network adequacy and engaging in practices that effectively steer patients to PBM-affiliated or large retail pharmacies, contrary to the statute's intent to protect patient choice and access.

K. The Defendants' conduct amounts to tortious interference with the established business relationships between Martella's Pharmacies and the Plaintiffs and Class members, causing intentional disruption of access to critical healthcare services.

L. The public health crisis resulting from the Defendants' actions justifies immediate injunctive relief to prevent irreparable harm to the Plaintiffs and the Class, particularly in light of the recent pharmacy closures in Cambria County. M. Grant such other and further relief as the Court deems just and proper.

M. JURY TRIAL DEMANDED.

Respectfully submitted,

Matthew J. Scanlon, Esq.

## **VERIFICATION**

I, Matthew J. Scanlon, Esq., do hereby verify that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information and belief, and are made subject to the penalties of 18 Pa.C.S.A. §4904 relating to unsworn falsification to the authorities.

Date: 8/15/2025

Matthew J. Scanlon, Esq.

**CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: Plaintiffs

Signature:

Name: Matthew J. Scanlon, Esq.

Attorney No. (if applicable): 307209

## IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA

GARRETT BOWDEN, individually and on behalf of all others similarly situated, i.e., "the CLASS", pursuant to 231 Pa. Code Sections 1702-1704,

Plaintiffs,

v.

EXPRESS SCRIPTS, INC., CIGNA CORPORATION, EVERNORTH HEALTH SERVICES, UPMC HEALTH PLAN, HIGHMARK INC., and JOHN DOES 1–10,

Defendants.

ACTION IN EQUITY – INJUNCTIVE RELIEF

DOCKET NO: 2025-*3625*

## **PETITION FOR IMMEDIATE, PRELIMINARY INJUNCTION**

Counsel of Record for Class Plaintiffs:

Matthew J. Scanlon, Esquire
PA I.D. #307209
matt@swlegalteam.com
Timothy Grant Wojton, Esquire
PA I.D. #307894
tim@swlegalteam.com

SCANLON & WOJTON, LLC
304 Ross Street, 2nd Floor
Pittsburgh, PA 15219
412-918-1241 – office
412-235-7275 – fax

## NOTICE TO DEFEND

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take prompt action within twenty (20) days after this Complaint is served, by entering a written appearance or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that, if you fail to do so, the case may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

You should take this paper to your lawyer at once. If you do not have a lawyer, or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.

Laurel Legal Services, Inc.
227 Franklin Street, Suite 400
Johnstown, PA 15901
814-536-8917 (office)
814-535-3377 (fax)

# I. INTRODUCTION

1. This Petition is brought by clients and/or patients of Martella's Pharmacies — a critical healthcare provider in Cambria County and surrounding areas which include Martella's Pharmacy in Johnstown, Martella's Pharmacy of Windber, Martella's Pharmacy of Parkhill, Boswell Prescription Center, Ligonier Pharmacy, and Penn Laurel Pharmacy — who face imminent loss of access to their medications and pharmacy services due to the Defendants' decision to terminate Martella's from their provider networks.

2. Defendants, led by Express Scripts, Inc., and acting in coordination with UPMC Health Plan and Highmark Inc., have announced their intent to remove Martella's Pharmacies as an in-network provider on or about August 15, 2025, without offering adequate alternative access to care, nor a means or path for Martella's to remain "in-network".

3. Martella's operates six community-based retail pharmacy locations and provides: Home delivery for the elderly and disabled; Medi-Pac adherence packaging that pre-sorts medication by dose, day, and time; and comprehensive pharmacy services for long-term care homes.

4. The termination of Martella's from the network will cause immediate, widespread harm to elderly, disabled, and medically fragile patients — many of whom are unable to travel, manage complicated medication regimens, or find comparable alternatives.

5. This harm is exacerbated by the bankruptcy and closure of eight Rite Aid pharmacy locations in Cambria County, many within recent months, many as recent as May 2025. These closures have already overwhelmed remaining pharmacies and left the region medically fragile.

6. Plaintiffs seek an emergency injunction and damages to prevent further harm to public health and restore access to life-sustaining care.

# II. JURISDICTION AND VENUE

7. Jurisdiction is proper under the laws of the Commonwealth of Pennsylvania. Venue is proper in this Court pursuant to Pa. R.C.P. 1006 because the events giving rise to these claims occurred in Cambria County, where Plaintiffs reside and received services.

# III. PARTIES

8. Plaintiff, Garrett Bowden, is an adult resident of Cambria County, Pennsylvania, insured by UPMC Health Plan and a long-time patient of Martella's Pharmacies, specifically at Windber.

   a. There are currently, as of August 13, 2025, over 135 plaintiffs who have retained the underlying counselor's law firm to take part in this class action suit, thus satisfying the requirements of Rule 1702, i.e., the class is so numerous that joinder of all members is impracticable, there are questions of law or fact common to the class, the claims or defenses of the representative parties are typical of the claims or defenses of the

class, the representative parties will fairly and adequately assert and protect the interests of the class, and, a class action provides a fair and efficient method for adjudication of the controversy. *See 231 Pa. Code Section 1702.*

9. Defendant Express Scripts, Inc. is a pharmacy benefit manager (PBM) organized in Missouri and licensed in Pennsylvania. It administers pharmacy benefits for health plans including UPMC and Highmark.

10. Defendant Cigna Corporation is a multinational health services company and parent of Express Scripts.

11. Defendant Evernorth Health Services is a Cigna subsidiary that manages PBM and health plan services, including Express Scripts operations.

12. Defendant UPMC Health Plan is a Pennsylvania nonprofit health insurance provider that contracts with Express Scripts for pharmacy benefits.

13. Defendant Highmark Inc. is a Pennsylvania-based health insurer also contracting with Express Scripts and/or Evernorth for PBM services.

14. Defendants John Does 1–10 are unknown persons or entities responsible for or involved in the decision to remove Martella's from the provider networks.

## IV. PETITION FOR INJUNCTIVE RELIEF

15. Plaintiffs bring this Petition on behalf of themselves, and all others similarly situated, defined as: All individuals residing in Pennsylvania who, as of August 2025, are patients of Martella's Pharmacies and are enrolled in a health plan administered by UPMC Health Plan or Highmark Inc. using Express Scripts or Evernorth as the pharmacy benefit manager.

16. The facts supporting the Plaintiffs' Petition for Preliminary Injunctive Relief are more fully set forth in the Class Action Complaint that they have filed today, August 15, 2025, in the Cambria County Prothonotary. However, to reiterate:

17. Martella's Pharmacies operates six physical pharmacy locations serving thousands of residents across Cambria County and nearby communities.

18. The pharmacies also provide: Home delivery; Medi-Pac adherence packaging; Long-term care pharmacy services.

19. Many Martella's patients are elderly, disabled, and/or managing chronic illness. Their ability to live independently often depends on Martella's systems and services.

20. On or about August 15, 2025, Defendants plan to terminate Martella's from their pharmacy networks, meaning patients using UPMC or Highmark coverage will be unable to fill prescriptions there, or received home delivery of their medications.

21. No meaningful alternatives exist for most patients — particularly those without transportation, caregivers, or digital access to manage mail-order systems.

22. The closure of eight Rite Aid locations in Cambria County has already flooded local pharmacies. There is no available capacity to absorb the patients displaced by Martella's termination.

23. Defendants have offered no justification to patients and have made no accommodations to preserve access for those most vulnerable.

24. Without intervention, Plaintiffs and the Class will suffer irreversible harm and possible death.

25. The removal of Martella's Pharmacies from the provider network will lead to medication non-adherence, especially among elderly patients with complex regimens, limited mobility, or cognitive impairments.

26. This will result in increased emergency department visits, hospital admissions, and adverse health events, further burdening a rural healthcare system that is already overrun, understaffed, and operating near capacity.

27. Local hospitals and emergency services in Cambria County and the surrounding areas cannot safely absorb a sudden influx of avoidable medical crises caused by this pharmacy access disruption.

28. PBM's administer pharmacy benefit management services on behalf of clients. These clients are known as payers, and include employers, health insurer plans, labor unions, employer coalitions and government entities.

29. PBM's provide various services to these payers including development drug formularies, creating and managing networks of pharmacies, processing prescription drug claims, reporting drug expenditures, creating and administering clinical programs, and negotiating with pharmaceutical manufacturers for rebates on behalf of their clients.

30. PBM's began providing claims processing and administrative services for health insurers over 60 years ago and have become concentrated to a few companies, including Defendant, Express Scripts, Inc.

31. PBM's are integrated within large health care conglomerates, including UPMC Health Plan and Highmark, which allows PBM's such as Express Scripts, Inc. to leverage power along every link within the pharmaceutical supply chain.

32. PBM's like ESI exert tremendous influence over drug ricing and purchasing decisions, greatly affecting the bottom-line out of pocket drug price to the patient, including Plaintiffs herein.

33. The financial toll affecting patients, including Plaintiffs herein, is experienced mainly as a result of drug price fixing and collusion between PBM's and larger health plans, not unlike Defendants named in this matter.

34. A typical prescription drug transaction in the United States involves at least five and as many as eight different parties, many of which are invisible to the patient attempting to fill a prescription.

35. The process begins when a doctor or similarly enabled medical professional, i.e., nurse practitioner, physician assistant, writes a prescription for a patient and send the prescription to the patient's pharmacy. Almost all prescriptions are sent through a system, a network, maintained electronically by a third party. Both doctors' offices and pharmacies can access this network. Once the pharmacy receives the patients' prescriptions, it submits a claim for the price to be paid by the patients' insurance provider. The claim does not go directly to the insurance company but to the PBM that the insurance company has contracted with, i.e., UPMC Health Plan and Highmark have contracts with Express Scripts, Inc. to manage prescription benefits on behalf of patients insured by UPMC Health Plan and Highmark. The PBM pays the pharmacy based upon unpredictable and nebulous reimbursement calculations based upon numerous factors, including, contracts between the health plans and the PBM's, between PBM's and pharmacies or pharmacy services administrative organizations which contract with PBM's on behalf of small or independent pharmacies, between pharmacies and drug wholesalers or manufacturers, and between health plans and their beneficiaries. The PBM then collects reimbursement from the insurance company based upon a separate price list that it has negotiated with that insurance provider.

36. PBM Defendants are vertically integrated, meaning, they own or are owned by entities that participate at different levels or points in the supply chain for prescription drugs, and thus, control the market unfairly, often leading to unregulated price fixing, profit-gouging and unfair competition by setting a market which cuts out smaller pharmacies, like Martella's. Decades of intense market consolidation has provided PBM's, not unlike Express Scripts, Inc., with vast market power over independent pharmacies, non-affiliated insurance providers, other market participants, and the customer, i.e., the patients, whose health care and prescription drug provisions, they control.

37. For instance, none of the patients, i.e., the Plaintiffs in this Class, were ever notified that their prescriptions would be moving to Giant Eagle, CVS, or other large retail pharmacies, or, provided a choice in the matter.

38. PBM's receive a large source of their revenue from "spread pricing". This occurs where a PBM charges the insurance company a higher (sometimes significantly higher) rate for certain drugs than it paid to the pharmacy. Due to the opacity of the PBM's pricing mechanisms,

pharmacies like Martella's do not know where spread pricing is occurring. As "spread pricing" became a source of public knowledge, and infuriation, rightfully so, PBM's turned to an alternate revenue source - - "specialty drugs", high-cost prescription medications used to treat often complex medical problems, including conditions like cancer, arthritis, multiple sclerosis, etc. Many of these medications require special handling and administration to patients, e.g., injection intravenously or arterial infusion.

39. The prevalence of specialty drugs led to the creation of specialty pharmacies. Each of the six largest PBM's operates its own affiliated specialty pharmacy, accounting for over 66% of the specialty drug dispensing revenue. This is further evidence of collusion and drug-price fixing.

40. Due to the potentiality of incredibly high profits, the majority of new drugs being developed by large pharmaceutical companies and brought to market are intended to be marketed and sold as specialty drugs; by forcing or incentivizing their plan members to purchase specialty drugs from the PBM's specialty pharmacies they own and collect reimbursement for the full price of specialty pharmaceuticals from health plans.

41. PBM's also utilize prescription discount cards to harness increased market power and control, exerting influence and further unfairly competing with smaller pharmacies. PBM's have created discount programs and negotiated prices with pharmacies, then worked with marketing companies to promote and advertise the discount cards to patients directly. Pharmacies chose to honor certain cards as a means of building patient loyalty and increasing business traffic into the pharmacy.

42. Now, PBM's, including Defendants herein, and health plans, inclusive of named Defendants herein, are colluding and unfairly competing to exclude smaller pharmacies by refusing to contract with said smaller pharmacies, driving up the costs of prescription medications for small pharmacies and their clientele, i.e., the patients ("Plaintiffs") herein. PBM's have done this by making the acceptance of their entire collection of discount cards a condition of the network agreements pharmacies, which are forced to sign to fill prescriptions covered by the PBM's, even though it often means the smaller pharmacy will lose money on a significant proportion of those transactions.

43. In the event there is any pushback or disagreement between the smaller pharmacies and the PBM's, the PBM's simply decide to terminate the contractual relationship with said pharmacies and move all prescriptions for patients, i.e., the Plaintiffs herein, without prior knowledge or consent by patients, to large, compliant, colluding pharmacies, including Giant Eagle and CVS.

44. The result of these "partnerships" between Express Scripts, Inc. and other named Defendants herein amounts to price fixing agreements that enable PBM's to allocate discount card transactions amongst one another in real time, ensuring that PBM's pay the lowest possible reimbursement rates to pharmacies on every transaction. The partnerships dramatically

increase the portion of prescriptions processed through discount cards, instead of processing through regular insurance transactions, thus targeting and attacking a stream of revenue upon which independent pharmacies rely for their financial stability and survival. This ultimately negatively impacts and effects the patients who can no longer afford to use their hometown pharmacy; a pharmacy that has been directly cut out of competition, as aforesaid, or, basically forced out through unfair competition based upon the models described above.

45. The brunt of the harm caused by the PBM's anticompetitive conduct is borne by independent pharmacies, not unlike Martella's, which when bleeds down to the patients, the Plaintiffs herein. Small pharmacies often do not even understand the complex financial arrangements that determine the reimbursement rate paid to them by PBM's. The reimbursement rates pharmacies receive are set by PBM's with their health insurer clients.

46. Plaintiffs bring this Petition on behalf of themselves and all other similarly situated as a class.

47. In addition to the damages sought in their corresponding Class Action Complaint, the Plaintiffs are also seeking injunctive relief, prohibiting or at least delaying the Defendants' current plan to drop Martella's as a pharmacy – a plan that is **set to take effect Monday, August 18, 2025.**

## COUNT I – PRELIMINARY INJUNCTION

48. The foregoing paragraphs are incorporated by reference as though fully set forth hereinbelow.

49. Preliminary, injunctive relief is appropriate for the following reasons:

a. Immediate and Irreparable Harm – the patients who rely upon Martella's Pharmacy for quick, easy access to drugs and other medical services will be denied those drugs and services once the Defendants' plan takes effect, causing many Plaintiffs to suffer as result. For many Plaintiffs, Martella's is the closest and, practically speaking, only location that can service their needs.

b. Greater Injury Without the Injunction – obviously, the medical harm that will likely befall the Plaintiffs far outweighs the self-serving profit motive of the Defendants in pursuing their scheme to squeeze out and bankrupt smaller, private pharmacies like Martella's;

c. Likelihood of Success on the Merits - as set forth in the Plaintiffs' Class Action Lawsuit, there is good reason to believe and conclude that the Defendants have engaged in deceptive and self-serving behavior at the expense of thousands of customers of Martella's six (6) locations. The Plaintiffs do believe and aver that their Class Action has a strong likelihood of success.

d. Restoration of Status Quo – injunctive relief would do no more than maintain the status quo – that is, it would keep Martella's "in-network," preserving patients' access to necessary medications and treatments pending a hearing or trial on this matter;

e. Reasonably Tailored Relief – the injunctive relief sought only requires maintaining the existing network status. For this reason, it is reasonably tailored to the relief sought;

f. Public Interest – this matter is of extraordinary public interest. Not only has it garnered the attention of media outlets throughout Pennsylvania, but the injunctive relief will serve the public good. Not only are thousands of Martella's customer's potentially impacted by the Defendants'' current scheme, but 270 individuals employed by Martella's are looking at lay offs, termination or the complete and total bankruptcy of Martella's altogether.

WHEREFORE, the Plaintiffs/Petitioners respectfully request this Honorable Court GRANT their Petition seeking immediate, Preliminary Injunctive relief and prohibit the Defendants, and specifically, Express Scripts, from dropping Martella's as participating pharmacy.

Respectfully submitted,

Matthew J. Scanlon, Esq.

**VERIFICATION**

I, Matthew J. Scanlon, Esq., do hereby verify that the statements made in the foregoing Petition for Immediate, Preliminary Injunction are true and correct to the best of my knowledge, information and belief, and are made subject to the penalties of 18 Pa.C.S.A. §4904 relating to unsworn falsification to the authorities.

Date: 8/15/25

Matthew J. Scanlon, Esq.

IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA
CIVIL DIVISION

GARRETT BOWDEN, individually and | Docket No. 2025- 3625
on behalf of all others similarly situated, |
i.e., "the CLASS", pursuant to 231 Pa. Code | ACTION IN EQUITY
Sections 1702-1704, | INJUNCTIVE RELIEF
|
Plaintiffs, |
|
vs. |
|
EXPRESS SCRIPTS, INC., CIGNA |
CORPORATION, EVERNORTH HEALTH |
SERVICES, UPMC HEALTH PLAN, |
HIGHMARK INC., and JOHN DOES 1-10, |
|
Defendants. |

Prothonotary Cambria Co, PA, FILED
AUG 15 '25 PM12:40
ᴋᶜ

## ORDER

AND NOW, this 15th day of August, 2025, the Court having received a Petition for

Immediate Injunctive Relief this day, August 15, 2025, and the averments contained in the

Petition alleging that Defendants plan to terminate Martella's Pharmacies from their network

of pharmacies this day August 15, 2025, causing alleged irreparable injuries set forth in their

Petition, it is hereby ORDERED AND DECREED as follows:

1.  Plaintiffs' Petition for Immediate Injunctive Relief is **GRANTED** pursuant to

Pa.R.Civ.P. 1531 et al. Accordingly, the Defendants are directed by the Court not to terminate

Martella's Pharmacies from their network of pharmacies and maintain the status quo with

Martella's Pharmacies until further Order of Court.

2.  A hearing on this Immediate Preliminary Injunction will be held on **Wednesday,**

**August 20, 2025, at 2:30 p.m.**

3.	The Prothonotary shall immediately serve a copy of this Order on Plaintiffs and Defendants by electronic means.

4.	The Plaintiffs are **DIRECTED** to assist the Prothonotary in providing addresses, email addresses, fax numbers, and/or telephone numbers for the Defendants so they are provided with notice of this **ORDER**.

5.	The Plaintiffs are further **DIRECTED** to assist the Prothonotary in providing immediate notice to Defendants by forwarding a copy of this ORDER to the Defendants by electronic means.

BY THE COURT:

Michael A. Carbonara, Judge

GARRETT BOWDEN

  VS.

EXPRESS SCRIPTS INC (ET AL.)

**IN THE COURT OF COMMON PLEAS**
**OF CAMBRIA COUNTY, PA**
**CIVIL DIVISION**
**10TH JUDICIAL DISTRICT**

**CASE NUMBER**
2025-3625

## NOTICE OF ORDER

MATTHEW J SCANLON, ESQ

SCANLON & WOJTON LLC
304 ROSS STREET
2ND FLOOR
PITTSBURGH, PA 15219

Enclosed is the document from the Court of Common Pleas of Cambria County, Pennsylvania.

Entered on:    August 15, 2025

Please Acknowledge receipt of notice of hereon and return.

Prothonotary Cambria Co, PA, FILED
AUG 15 '25 PM12:48

_____

Lisa Crynock
Cambria County Prothonotary

Now this _____August 15_____ day of _____2025_____

I hereby acknowledge receipt of above notice.

_____
Please Sign