UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

---

GARRETT BOWDEN, Individually and on
behalf of all others similarly situated.,

      Plaintiff,

                                    Case No.: 3:25-cv-00261-RJC

v.

EXPRESS SCRIPTS, INC., *et al.*

      Defendants.

---

**OPPOSITION TO MOTION TO REMAND CASE FOR LACK OF DIVERSITY
JURISDICTION AND/OR SUBJECT MATTER JURISDICTION
UNDER ERISA AND CAFA**

---

Defendants Express Scripts, Inc. ("ESI"), Cigna Corporation, and Evernorth Health Services, pursuant to this Court's briefing schedule (ECF No. 9), and in opposition to the Motion to Remand filed by Plaintiffs Garrett Bowden, Individually and on behalf of all others similarly situated (collectively, "Plaintiffs") state as follows:

## <u>INTRODUCTION</u>

The Court should deny Plaintiffs' Motion to Remand because this Court has federal question jurisdiction over Plaintiffs' claims. 28 U.S.C. §§ 1331, 1332, 1441(a). The Court has federal question jurisdiction under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), because Plaintiffs' purported state law claims pertain to benefits they allege are due to them under their employee benefit plans offered and/or administered by Defendant UPMC Health Plan, Inc. ("UPMC") and Defendant Highmark Inc. ("Highmark") (collectively, the "Plans"). No matter how Plaintiffs choose to label their claims, their claim is based upon their alleged right to fill prescriptions at the Martella's pharmacies[1] ("Martella's") as in-network providers under the Plans. Under the "extraordinary pre-emptive power" of ERISA, 29 U.S.C. § 1132(a), claims relating to and necessarily depending upon rights and benefits under ERISA plans are removable to federal court – regardless of whether they are pled as state law causes of action.

Plaintiffs' attempt to dodge this Court's jurisdiction by re-characterizing the basis of their claims fails. Regardless of the alleged damages Plaintiffs claim they and the putative class may experience as a result of Defendants' conduct, the gravamen of Plaintiffs' allegations arise out and relate to Plaintiffs' allegation that they want Martella's pharmacies to remain in-network providers under their respective health benefit plans so they can continue receiving their prescriptions and

---

[1] The "Martella's pharmacies" refers to a group of pharmacies identified in Plaintiffs' Complaint, paragraph 3, owned and/or operated by the Martella family.

other services from Martella's and *avoid* the alleged damages. The status of Martella's pharmacies as network pharmacies is a benefit to which Plaintiffs and the putative class members claim they are entitled under their plans. Plaintiffs have no response to this argument. Therefore, ERISA completely preempts Plaintiffs' claims.

Further, in addition and in the alternative to complete ERISA preemption, Plaintiffs' class action claims are removable under the Class Action Fairness Act ("CAFA") because all requirements of CAFA removal are met. Plaintiffs apply the incorrect standard and burden of proving the amount in controversy under CAFA, and their belated attempt to avoid federal jurisdiction fails for this supplementary reason. In addition, Plaintiffs do not meet their heavy burden of establishing either the home state or the local controversy exception to this Court's original jurisdiction under CAFA electing to rely solely on the allegations in their pleadings, which contain no evidence or allegations regarding the citizenship of the putative class members thereby failing to meet the burden of establishing a required element of both of these exceptions. For all these reasons, the Court should deny Plaintiffs' Motion.

## PROCEDURAL POSTURE AND MOTION TO REMAND

Plaintiffs filed their Complaint in the Court of Common Pleas of Cambria County, Pennsylvania on August 15, 2025. Shortly thereafter, Plaintiffs filed a Petition for Immediate Preliminary Injunction, without notice to Defendants, and obtained an Immediate Preliminary Injunction (temporary restraining order) ex parte in Cambria County on behalf of themselves and the putative class. Defendants later received notice of the Court's entry of the Immediate Preliminary Injunction from Plaintiffs' counsel via email.

Defendants removed this action to this Court on August 19, 2025 based on federal question jurisdiction pursuant to section 502(a) of ERISA and CAFA, and UPMC and Highmark consented

in that removal. *See* ECF No. 1, ¶ 5. The day following removal, Plaintiffs sought to remand this case to state court through this Motion, arguing that ERISA preemption does not apply and the requirements of CAFA, primarily the amount in controversy, are not met.

## PLAINTIFFS' COMPLAINT

Plaintiffs allege the following facts in their Complaint: Plaintiff Garrett Bowden is a member of a benefit plan offered by Defendant UPMC and that he is a resident of Cambria County, Pennsylvania (ECF No. 1-2, Compl. ¶ 8); as of August 13, 2025, there are more than 135 plaintiffs who retained Plaintiffs' counsel for purposes of the class action lawsuit (*id.*, ¶ 8a); Plaintiffs bring the class action complaint on behalf of themselves and all other similarly situated, defined as: "All individuals residing in Pennsylvania who, as of August 2025, are patients of Martella's Pharmacies and are enrolled in a health plan administered by UPMC Health Plan or Highmark Inc. using Express Scripts or Evernorth as the pharmacy benefit manager." (*id.*, ¶ 15); Plaintiffs estimate and aver "that, at a minimum, the Class participants would exceed thousands of Class members" (*id.*, ¶ 49; *see also* ¶ 16); Plaintiffs' claims are "typical of the class" (*id.*, ¶ 18); Martella's Pharmacies operate six physical pharmacy locations "serving thousands of residents across Cambria County and nearby communities," and if Martella's is terminated from the pharmacy networks, "[n]o meaningful alternatives exist for most patients" (*id.*, ¶¶ 20, 24); without intervention, Plaintiffs and the class will suffer "irreversible harm and possible death" including damages such as "loss of access" to services such as "home delivery, Medi-Pac adherence packaging, and long-term care support," "increased costs" of prescription medication such as higher prices at alternative pharmacies and travel expenses, and reduced quality of care including "increased emergency department visits, hospital admissions, and adverse health events" (*id.*, ¶¶ 27-29; 68; 76; 83). Plaintiffs also seek punitive and treble damages (*id.*, ¶¶ 70, 84) and attorneys' fees and costs (*id.*,

¶ 70), in addition to injunctive relief (*id.*, ¶¶ 6, 91; *see also* Petition for Immediate Preliminary Injunction, ECF No. 1-2).

## **LEGAL ANALYSIS**

**I.** **The Court Should Deny the Motion to Remand Because This Court Has Federal Question Jurisdiction in That Plaintiffs' Purported State Law Claims are Completely Preempted by ERISA.**

Plaintiffs allege that Defendants terminated the Martella's pharmacies from the network of pharmacies available to Plaintiffs under their health benefit plans. The pharmacy networks available to Plaintiffs are provided pursuant to the benefits established by their health benefit plans. Because Plaintiffs' claims are based upon their alleged rights under their employee benefit plans, Plaintiffs' claims fall within the scope of ERISA's civil enforcement provision and Plaintiffs' sole remedy—if any—must come under ERISA. Their claims are therefore completely preempted by ERISA and removable to federal court. 28 U.S.C. §§ 1331, 1441(a).

Plaintiffs do not contest that they are members of ERISA plans. Rather, Plaintiffs argue that they are not seeking benefits under ERISA. Plaintiffs' Motion attempts to re-characterize their claims as something they are not. To be clear, Plaintiffs' claims are all about specific prescription benefits available to them under the Plans. Plaintiffs' Motion emphasizes that the availability of and access to specific services from an "in-network" pharmacy—Martella's pharmacies—is the central issue in their Complaint. *See, e.g.*, Motion, ECF No. 7, ¶¶ 10 (Plaintiffs are "seeking to challenge the termination of ESI's contract with Martella's"); 12a (Plaintiffs "challenge UPMC and Highmark's failure to maintain adequate in-network access to pharmacies"); 22 (the "gravamen of the Class Complaint" concerns the Defendants' "impermissibly interfering" with the patients' "access" and choice to "utilize Martella's Pharmacy locations"). This central issue— whether Martella's pharmacies are considered "in" or "out" of the Plans' pharmacy networks—

relates to the benefits available to Plaintiffs under their benefit plans.

Plaintiffs' Motion contends their state law claims do not allege "violations with respect to their employee-benefit plans" and, therefore, any removal on ERISA grounds "is a complete red herring." ECF No. 7, ¶¶ 7-8. But complete preemption under Section 502(a) is an exception to the well-pleaded complaint rule, and a defendant may remove a case to federal court where, as here, the complaint does not expressly plead a claim under federal law, so long as the plaintiff asserts a state law cause of action that duplicates, supplements, or supplants ERISA's comprehensive enforcement scheme. *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 207-08 (2004). *See also Levine v. United Healthcare Corp.*, 402 F.3d 156, 162 (3d Cir. 2005) ("Certain federal laws, however, including ERISA, so sweepingly occupy a field of regulatory interest that any claim brought within that field, however stated in the complaint, is in essence a federal claim. In such cases, the doctrine of complete preemption provides federal jurisdiction and allows removal to federal court.")

"Complete preemption creates removal jurisdiction even though no federal question appears on the face of the plaintiff's complaint." *Sopak v. Highmark, Inc.*, 2002 WL 1271366, at *3 (W.D. Pa. Feb.19, 2002). "If Plaintiff's claims fall within the scope of section 502(a), they are completely preempted, and removal was proper." *Gatti v. Western Pennsylvania Teamsters & Employers Welfare Fund*, No. 07-1178, 2007 WL 3072264, at *1 (W.D. Pa. Oct. 19, 2007) (citing *Levine*, 401 F.3d at 162). "A claim 'falls within' the scope of ERISA and is completely preempted, if the plaintiff 'could have brought his claim under ERISA § 502(a)(1)(B), and … there is no other independent legal duty that is implicated by a defendant's actions.'" *Knochel v. HealthAssurance PA., Inc.*, 2006 WL 3040847, at *2 (W.D. Pa. Oct.22, 2006) (citing *Davila*, 542 U.S. at 210).

There is no doubt that Plaintiffs' claim could have been brought under § 502(a)(1)(B). ERISA section 502(a) provides: "A civil action may be brought … (1) by a participant or

beneficiary... (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Here, Plaintiffs seek to "enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan," because Plaintiffs seek injunctive relief requiring the Plans to include Martella's within the network of pharmacies that are included within the benefit plan. *See Scheibler v. Highmark Blue Shield*, 243 Fed. App'x 691, 694 (3d Cir. 2007) (plaintiff's purported state law claims directed at the defendants' "decision not to cover certain treatment" were completely preempted by ERISA); *Sanchez v. MetLife, Inc.*, No. CV 23-23073 (ES), 2024 WL 4024105, at *8 (D.N.J. Sept. 3, 2024) ("Claims which challenge the type, scope of provision of benefits under ... [the] ... plan[ ] are completely preempted under ERISA") (internal quotation and citations omitted). And there is no independent legal duty at issue here, because Defendants' only relationship with Plaintiffs arises from the administration of the Plan, and Defendants would do not owe Plaintiffs "any duty independent of the [Plans]." *Roma Concrete Corp. v. Pension Assocs.*, 384 F. Supp. 3d 507, 515-16 (E.D. Pa. 2019).

The gravamen of Plaintiffs' claim is that Martella's will no longer be in the Plan's pharmacy network. To be clear, the issue is <u>*not*</u> whether Plaintiffs are able to fill their prescriptions at Martella's. Plaintiffs are free to fill their prescriptions wherever they want. The issue is whether or how much the Plan will pay for prescriptions that Plaintiffs fill at Martella's under the Plan's pharmacy benefits, which turns upon whether Martella's is within ESI's contracted pharmacy network. And courts are clear that a benefit plan's determination of which providers are included in its network fit squarely within the administration of benefits that are governed by ERISA.

In *Pharmaceutical Care Mgmt. Assoc. v. Mulready*, 78 F.4th 1183 (10th Cir. 2023), the court held that statutes that "dictate which pharmacies must be included in a PBM's network" are

preempted [by ERISA] because they deal with "an element of plan structure or benefit design." *Id.*

at 1198. The court explained:

> However sliced, the network restrictions "require providers to structure benefit plans in particular ways," *Rutledge,* 141 S. Ct. at 480, and "prohibit employers from structuring their employee benefit plans in a certain manner," *Shaw,* 463 U.S. at 97, 103 S.Ct. 2890. And either way, ERISA preempts these provisions because a pharmacy network's scope (which pharmacies are included) and differentiation (under what cost-sharing arrangements those pharmacies participate in the network), are key benefit designs for an ERISA plan.

*Id.* (quoting *Rutledge v. PCMA*, 592 U.S. 80, 141 S.Ct. 474 (2020) and *Shaw v. Delta Airlines, Inc.*, 464 U.S. 85, 103 S.Ct. 2890 (1983)).

Similarly, in *McKee Foods Corp. v. BFP Inc.*, No. 1:21-cv-279, 2025 WL 968404 (E.D. Tenn. March 31, 2025), the court held that ERISA preempted a state statute that would have precluded a plan from terminating a pharmacy from its pharmacy network. The court explained: "[T]he scope of an ERISA plan's provider network (in this case a pharmacy network) is a key aspect of plan administration: how the plan structures and designs its benefits. Depending on a plan's goals, it may choose to offer its beneficiaries more or fewer pharmacy options . . ." *Id.* at *9 (citing *Mulready*, 78 F.4th at 1188) (internal quotations omitted). "Any-willing-provider requirements eliminate this choice, forcing ERISA plans to accept, as the name suggests, any willing provider. In doing so, these provisions 'require providers to eliminate benefit plans in a particular way,' eliminating the plans' discretion to shape benefits as they see fit." *Id.* (quoting *Rutledge,* 592 U.S. at 86-87. *See also Kentucky Ass'n of Health Plans, Inc. v. Nichols*, 227 F.3d 352, 363 (6th Cir. 2000), *aff'd sub nom*, *Kentucky Ass'n of Health Plans v. Miller* 538 U.S. 329 (2003) (any willing provider laws are preempted by ERISA).[2]

---

[2] In *Kentucky Ass'n of Health Plans*, the Supreme Court held that the any willing provider law was saved from ERISA preemption for insured plans by the insurance savings clause, ERISA § 514(b). However, as that case demonstrates, the operation of the insurance savings defense to preemption does not defeat complete preemption for purposes of determining jurisdiction. *See also Wirth v. Aetna U.S. Healthcare*, No. Civ.A. 03-5406, 2004 WL 253525, at *4 (E.D.

In their Complaint, Plaintiffs allege that they will "face imminent loss of access to their medications and pharmacy services due to the Defendants' decision to terminate Martella's from their provider networks." ECF No. 1-2, Compl. ¶ 1. *See also id.*, ¶ 23 ("Defendants plan to terminate Martella's from their pharmacy networks, meaning patients using UPMC or Highmark coverage will be unable to fill prescriptions there"). To be clear, Plaintiffs are free to fill prescriptions at Martella's or anywhere they want. But the termination of Martella's from the Plan's pharmacy network means that Martella's will be an out-of-network pharmacy, so prescriptions filled there may not be covered or may be covered on different terms. This is a quintessential ERISA claim, because Plaintiffs are complaining about what pharmacies are within the plan's pharmacy network and the terms upon which they can receive benefits when using those pharmacies.

This Court's decision in *Waldschmidt v. Aetna U.S. Healthcare*, 225 F. Supp. 2d 560 (W.D. Pa. 2002) is directly on point. In that case, plaintiff sued her husband's benefit plan, complaining that "her husband should have been placed at an 'out-of-network' facility, rather than the 'in-network' facility" that was approved by the plan. *Id.* at 562. The court denied plaintiff's motion to remand, holding that the claim was completely preempted by ERISA because it "relate[s] to the administration of benefits." *Id.* at 563. The court held: "Decisions of whether certain facilities are in-network or out-of-network involve the administration of benefits..." *Id.* at 565.

As in *Waldschmidt,* Plaintiffs' claims here are based on their complaint with their Plan's provider network. Plaintiffs allege that Martella's should be part of the Plan's in-network pharmacy benefits. ECF No. 1-2, Compl. ¶¶ 4, 23, 55, 91. Plaintiffs' claims challenging the

---

Pa. Feb. 10, 2004), *aff'd*, 137 Fed. Appx. 455 (3rd Cir. 2005) ("once complete preemption is demonstrated, the action is removable. Under this analysis, the federal court will retain jurisdiction and apply state law if the circumstances outlined in the savings clause of § 514(b)(2)(A) are satisfied.").

network of in-network providers "involve the administration of benefits" under the plan and are completely preempted by ERISA. *Waldschmidt*, 225 F. Supp. 2d at 565.

Plaintiffs attempt to wash their hands of ERISA, arguing that they "are not seeking to have the rights and benefits under the plans interpreted," but they are merely "seeking to challenge the termination of ESI's contract with Martella's..." ECF No. 7, ¶¶ 9-10. This is just semantics. The relevant import of the termination is that Martella's is no longer in the Plan's pharmacy network, meaning it is an out-of-network provider. Indeed, Plaintiffs say they challenge the plans' "failure to maintain adequate in-network access to pharmacies..." *Id.* ¶ 12.b. Again, a plan's decision as to how to structure its pharmacy network is an ERISA issue. *See McKee Foods*, 2025 WL 968404 at *9; *Mulready*, 78 F.4th at 1188. This is an ERISA claim, no matter how Plaintiffs wish to label it.

Plaintiffs' feeble attempt to distinguish *Mulready* and *Waldschmidt* only proves the point. In Paragraph 15 of their Motion, Plaintiffs agree that "[t]he gravamen of those cases to which Defendant cites discuss challenges to certain facilities being identified as in-network or out-of-network and network scope, which the Courts in those matters held involved ERISA determinations sufficient to preempt state law claims." And Plaintiffs agree that "the terms 'in-network' and 'out-of-network' appear in the Complaint filed" by Plaintiffs. ECF No. 7, ¶ 17. But Plaintiffs then leap to the unfounded and contradictory conclusion that the fact that their Complaint challenges the in-network status of Martella is irrelevant, because Plaintiffs' Complaint is based on "the anticipated physical, mental and emotion damages the Class Plaintiffs will suffer as a result of the PBM terminating the contractual relationship with Martella's..." *Id.* at ¶¶ 17-18. In other words, Plaintiffs appear to argue that while they have expressly alleged that their complaint is the termination of Martella's in-network status—which is clearly an ERISA issue—their claim is somehow removed from ERISA because they allege they will suffer physical harm from this

change in network status. This argument lacks any logic or support. Many ERISA claims for benefits involve an allegation by plaintiffs that they were harmed by the denial of a medical benefit. *See, e.g., Waldschmidt,* 225 F. Supp. 2d at 561-62 (finding complete preemption where plaintiff alleged that her husband died as a result of being placed at an in-network facility). The plaintiffs' allegations that a plan's denial of ERISA benefits caused them physical harm does not and cannot take the case out of ERISA.

For example, in *Tellep v. Oxford Health Plans*, No. 3:18-cv-392, 2019 WL 4072061 (D.N.J. Aug. 29, 2019), the court held that ERISA completely preempted plaintiff's claim that he was injured when his health plan approved coverage of a generic version of drug but not the branded version, because plaintiff's claims "are based on the administration of benefits." *Id.* at *7 (citation omitted). The plaintiff in that case alleged physical injury, alleging that he experienced seizures when he took the generic version. *Id.* at *2. Plaintiffs argue that *Tellep* is inapplicable, arguing that the "critical difference" is that Plaintiffs' claim here involves "impermissible interference with medical treatment access." ECF No. 7, ¶ 21. This distinction is imaginary, as the court in *Tellep* involved defendant's alleged "refusal to pay for the plaintiff's necessary medication," which the Court found was preempted by ERISA. 2019 WL 4072061, at * 8.

ERISA provides the exclusive remedy for this action, and Plaintiffs cannot avoid complete preemption by styling their claim as a state law cause of action. *Aetna Health, Inc.*, 542 U.S at 209. Therefore, Plaintiffs' Motion to Demand should be denied.

**II.     The Court Should Deny the Motion to Remand Because This Court Has Federal Question Jurisdiction Conferred by CAFA.**

      **A.  Defendants Met Their Burden of Establishing the Court's Original Jurisdiction under CAFA Because It is Reasonably Plausible That the Amount in Controversy Exceeds $5 Million.**

CAFA confers original jurisdiction over putative class actions on district courts where: (1) the amount in controversy exceeds $5,000,000, as aggregated across all individual claims; (2) there are minimally diverse parties; and (3) the proposed class consists of at least 100 or more members. *See* 28 U.S.C. § 1332(d); *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 482 (E.D. Pa. 2016) (citing *Neale v. Volvo Cars of N. Am., LLC*, 794 F. 3d 353, 357 n.1 (3d Cir. 2015)). As explained in the Notice of Removal, all three CAFA elements are met here. *See* ECF No. 1, ¶¶ 22-51. Plaintiffs admit that requirements (2) and (3) above are satisfied. ECF No. 7, ¶ 35. Plaintiffs *attempt* to contest the first requirement, the amount in controversy, *id.*, but apply the wrong standard. When evaluating the facts under the correct and proper standard, Defendants more than meet their burden of demonstrating the Court has federal jurisdiction under CAFA.

Notwithstanding Plaintiffs' erroneous argument to the contrary, the Court need not decide whether Plaintiffs can recover the jurisdictional amount with 100% accuracy or certainty because the standard for removal is whether "it is more likely than not that the amount in controversy exceeds the statutory minimum." *Fox v. Chipotle Mexican Grill, Inc.*, No. 2:20-cv-1448, 2021 WL 706757, at *6 (W.D. Pa. Feb. 23, 2021). The amount in controversy is measured by "a reasonable reading of the value of the rights being litigated." *Id.*; *see also Lewis v. Ford Motor Co.*, 610 F. Supp. 2d 476, 486 (W.D. Pa. 2005) (a defendant is "not obligated to research, state, and prove the plaintiff's claims for damages"). Here, a reasonable reading of the value of the rights being litigated and what is at stake in the underlying litigation demonstrates that for purposes of removal, the potential amount in controversy is satisfied.

Plaintiffs' flawed effort to challenge the amount in controversy in this action relies on the incorrect standard and inapposite law. Plaintiffs acknowledge as such when arguing "[w]here the plaintiff expressly limits the amount in controversy to an amount lower than the jurisdictional

requirement, '[t]he party wishing to establish subject matter jurisdiction has the burden to prove to a legal certainty that the amount in controversy exceeds the statutory threshold.'" ECF No. 7, ¶ 36 (citing *Frederico v. Home Depot*, 507 F.3d 188 (3d Cir. 2007); *Morgan v. Gay*, 471 F.3d 469 (3d Cir. 2006)). But Plaintiffs acknowledge they did not "expressly limit[ ] the amount in controversy" in any way; in fact, Plaintiffs admit "there is no monetary amount alleged in any paragraph or prayer paragraph in the entire Complaint." ECF No. 7, ¶ 39. Therefore, the *Morgan* standard is inapplicable.

Instead, this action presents a situation akin to that of *Samuel-Bassett v. Kia Motors Am., Inc.*, in which the plaintiff has not specifically averred (e.g., is "silent") in the pleadings as to the amount in controversy. 357 F.3d 392, 398 (3d Cir. 2004); *see also Frederico*, 507 F.3d at 196-97 (explaining the differences between the *Morgan* and the *Samuel-Bassett* standards and when each applies). Where the complaint is silent as to the amount in controversy, the case must be remanded only if it appears to a legal certainty that the plaintiff *cannot* recover the jurisdictional amount.

*Hoffman v. Nutraceutical Corp.* is instructive. No. 12–5803–ES–SCM, 2013 WL 885169, at *3-4 (D.N.J. Jan. 24, 2013). In *Hoffman*, the plaintiff argued for remand based on the *Morgan* strand of the legal certainty test claiming the defendant had not met its burden of proving "to a legal certainty" that plaintiff could recover the jurisdictional minimum. *Id.* at *3. The *Hoffman* court held "Plaintiff's interpretation of the applicable law is incorrect. *Morgan* only applies 'where the complaint specifically avers that the amount sought is less than the jurisdictional minimum,' and it is only then that a 'defendant seeking removal must prove to a legal certainty that plaintiff can recover the jurisdictional amount.'" *Id.* (quoting *Frederico*, 507 F.3d at 195-97). Upon review, the court found plaintiff's complaint did not "specifically aver that the amount sought is below the jurisdictional minimum, and therefore it is the *Samuel-Bassett* strand of the legal certainty test that

applies." *Id.* (citing *Frederico*, 507 F.3d at 196-98). Because "remand is only proper if it appears to a legal certainty that the plaintiff *cannot* recover the jurisdictional amount," "***it is the party challenging jurisdiction that bears the burden of proving, to a legal certainty, that the amount in controversy cannot exceed the jurisdictional threshold***." *Id.* (citing *Frederico*, 507 F.3d at 195) (emphasis added). Considering all the facts, including that Plaintiff merely repeated his allegations set forth in the complaint and "mistakenly argued that it is Defendant's burden to prove" the requisite damages amount, the Court held the plaintiff had not met his burden and denied the motion to remand. *Id.* at *5.

Plaintiffs here make the same error as the plaintiff in the *Hoffman* case in their reliance on *Roberts v. Tribeca Automotive, Inc.*, No. 2:18-cv-08330, 2018 WL 7575102 (D.N.J. Apr. 26, 2018). The *Roberts* case is inapposite because unlike Plaintiffs' Class Complaint, the *Roberts* complaint affirmatively pled that the value of the amount of controversy fell below the jurisdictional minimum. *Id.* at *3 (the "Complaint claim[ed] that the value of this matter falls below the $5,000,000 required for this Court to have jurisdiction under the Class Action Fairness Act.").

Here, contrary to the facts of *Roberts*, Plaintiffs' Complaint is silent as to the amount in controversy. ECF No. 7, ¶¶ 31, 39 (admitting "there is no monetary amount alleged … in the entire Complaint"). Because Plaintiffs have not averred specifically in the Complaint that the amount in controversy in less than the jurisdictional minimum, the case belongs in federal court unless the Court is "convinced to a legal certainty that Plaintiffs cannot recover at least $5 million." *Lewis*, 610 F. Supp. at 486. Under this standard, "[a] defendant can satisfy CAFA's amount in controversy requirement where its notice of removal includes a plausible allegation that the stakes exceed $5,000,000." *Fox*, 2021 WL 706757, at *6.

Other than applying the incorrect standard and burden, Plaintiffs do not otherwise contest Defendants' calculation of the amount in controversy. Plaintiffs' only attempt to even address the amount in controversy is their conclusory assertion that Express Scripts' claim that the amount in controversy likely exceeds $5 million "simply preposterous and unfounded." ECF No. 7, ¶ 32. Plaintiffs' attempt to brush off of their damages ignores the allegations in their own Complaint, where they assert a litany of alleged damages and health consequences they allege they are facing, including "irreversible harm and possible death." ECF No. 1-2, Compl. ¶¶ 27, 29, 55, 68, 83. When considering the correct standard and all of the pertinent facts as set forth in the Notice of Removal, Plaintiffs' allegations of compensatory damages, treble damages, punitive damages, injunctive relief, and attorneys' fees establish the requisite amount in controversy to meet CAFA. *See* ECF No. 1-2.

### B. Plaintiffs Have Not Met Their Heavy Burden of Proving That an Exception to Federal Jurisdiction Under CAFA Applies.

While the removing party—here, Defendants—bears the burden of establishing initial federal jurisdiction, "the party seeking remand bears the burden of proving by a preponderance of the evidence that one of the[ ] mandatory exceptions applies." *Torres v. CleanNet, U.S.A., Inc.*, No. 14-2818, 2014 WL 5591037, at *3 (E.D. Pa. Nov. 2, 2014); *see also Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 153 (3d Cir. 2009) ("[T]he district court correctly assigned to Plaintiffs the burden of establishing that the local controversy exception applies.")). Plaintiffs have not come close to meeting their burden of establishing that ***any*** exception to jurisdiction under CAFA exists or applies. Plaintiffs offer a passing reference to the "mandatory 'local controversy' and 'home state' exceptions" in their Motion, *see* ECF No. 7, ¶¶ 26-30, but Plaintiffs fall far short of meeting their burden of proving by a preponderance of the evidence that either of these

14

exceptions applies to their class action. *See* 28 U.S.C. § 1332(d)(4)(A) and (d)(4)(B). Accordingly, Plaintiffs' action should not be remanded to state court.

     1.  <u>Plaintiffs Have Not Met Their Burden to Prove the Home State Exception Applies.</u>

     To satisfy the burden of proof and succeed in their quest to remand pursuant to the home state exception, 28 U.S.C. § 1332(d)(4)(B), the party seeking to establish the exception—here, Plaintiffs—must prove the following by a preponderance of the evidence:

> (1) the party must establish that the citizenship of the members of two-thirds or more of the plaintiff class is the State from which the action was removed; (2) the party must identify the primary defendants; (3) the party must establish the citizenship of those primary defendants; and (4) the party must demonstrate that two-thirds or more of the members of the plaintiff class are citizens of the same state as the primary defendants.

*Anthony v. Small Tube Mfg. Corp.*, 535 F. Supp. 2d 506, 514-15 (E.D. Pa. 2007); *see also* 28 U.S.C. § 1332(d)(4)(B). Plaintiffs do not address, much less establish or prove, any of these elements by a preponderance of the evidence.

     a.  *The Home State Exception Does Not Apply Because Plaintiffs Have Not Met Their Burden to Provide Evidence of the Putative Class Members' Citizenship.*

     First, Plaintiffs fail to prove, through evidence, that greater than two-thirds of all proposed class members are Pennsylvania citizens. A person is considered a citizen of a state if the person is "domiciled within that state and is a citizen of the United States." *Anthony*, 535 F. Supp. 2d at 515 (citation omitted). State citizenship is treated as synonymous with domicile, and domicile is established by a person's residence coupled with an intent to make that place of residence someone's home. *Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3d Cir. 1972). "Domicile, however, is not necessarily synonymous with residence; one can reside in one place and be domiciled in another." *Schwartz v. Comcast Corp.*, Civ. A No. 05-2340, 2006 WL 487915, at *4 (E.D. Pa. Feb. 28, 2006) (citing *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989)); *see*

*also Krasnov*, 465 F.2d at 1300 (holding "mere residency in a state is insufficient for purposes of diversity"). Plaintiffs admit that some class members were not domiciled in Pennsylvania, as they assert that the injuries occurred "to Pennsylvania residents while domiciled and/or situated (while present) in Pennsylvania." ECF No. 7, ¶ 28.

Unless a plaintiff has narrowly defined the class to comprise only "citizens" of the locale at the time of removal – which Plaintiffs did not do here – the Third Circuit requires Plaintiffs to present affirmative evidence proving this element because naked "allegations of residence are not sufficient for purposes of establishing citizenship." *Anthony*, 535 F. Supp. 2d at 515 (quotation omitted). "It takes more than proof of residency to infer citizenship of that particular state because 'residency does not equate with domicile or citizenship.'" *Nop v. Am. Water Resources, Inc.*, No. 15-1691 (RBK/AMD), 2016 WL 4890412, at *3 (D.N.J. Sept. 14, 2016) (citing *Schwartz*, 2006 WL 487915, at *5-6); *see also Anthony*, 535 F. Supp. 2d at 508-09 (lack of evidence as to citizenship of putative class sufficient to deny motion to remand). Other circuit and district courts to have addressed the matter agree.[3]

Plaintiffs do not even *attempt* to establish that two-thirds or greater of the members of the putative class are citizens of the Commonwealth of Pennsylvania. Plaintiffs do not refer to the "citizenship" of the putative class at all. In their Complaint, Plaintiff Bowden alleges that he is a

---

[3] *Reece v. AES Corp.*, 638 Fed. Appx. 755, 769-70 (10th Cir. 2018) (class definition of "residents" encompasses groups who may not be citizens of the State); *see Nichols v. Chesapeake Operating, LLC*, 718 Fed. Appx. 736, 739-42 (10th Cir. 2018) (finding that allegation of class of "residents" was insufficient to establish "citizens" as required for exceptions); *Hargett v. RevClaims, LLC*, 854 F.3d 962, 965-67 (8th Cir. 2017) (rejecting that proposed class of "[a]ll persons who were Arkansas Medicaid-eligible beneficiaries" met the local controversy exception absent affirmative proof); *In re Sprint Nextel Corp.*, 593 F.3d 669, 673-76 (7th Cir. 2010) (rejecting that proposed class of "all Kansas residents" met local controversy exception, and noting that any inferences based on the class definition without actual evidence were based on "guesswork"); *Preston v. Tenet Healthsystem Mem. Med. Ctr.*, 485 F.3d 793, 798-802 (5th Cir. 2007) (evidence presented to support local controversy exception only established residency of proposed class, not citizenship); *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1165-66 (11th Cir. 2006); *Gerstenecker v. Terminix Int'l, Inc.*, 2007 WL 2746847, at *3 (S.D. Ill. 2007) (home state exception did not apply where the class definition required class member to be "located" within the state of Illinois because residency does not equal citizenship); *McMorris v. TJX Cos, Inc.*, 493 F. Supp. 2d 158, 166 (D. Mass. 2007) (class defined as Massachusetts residents who made purchases at specific stores insufficient to establish requisite citizenship for home state exception).

"resident of Cambria County, Pennsylvania," and he purports to bring this action on behalf of "[a]ll individuals residing in Pennsylvania …" ECF No. 1-2, Compl. ¶¶ 8, 15. Likewise, in their Motion, Plaintiffs summarily declare "[t]he putative class consists entirely of Pennsylvania *residents*," and the "principal injuries alleged [sic] occurred to Pennsylvania *residents* while domiciled and/or situated (while present) in Pennsylvania." ECF No. 7, ¶¶ 27-28 (emphasis added). Merely restricting the class by residency is not enough to establish citizenship for the home state exception. *Anthony*, 535 F. Supp. 2d at 508-09 (lack of evidence as to citizenship of putative class sufficient to deny motion to remand); *Schwartz*, 2006 WL 487915, at *6 (denying motion to remand because court had no evidence of citizenship of putative class members). Plaintiffs' bare assertions of the putative class members' residence and unsupported statements of counsel are neither facts nor evidence. As noted in the *Anthony* decision, "these bare assertions are wholly inadequate for the court to evaluate the citizenship of the class." 535 F. Supp. 2d at 517 (finding plaintiffs' failure to demonstrate the citizenship of the class "alone is sufficient to deny plaintiff's motion to remand").

Because residency does not equate to citizenship, Plaintiffs have not offered evidence of the citizenship of *any* putative class members, much less two-thirds of the putative class members. Therefore, Plaintiffs cannot meet the first requirement of the home state exception, and the Court need not even consider any of the other requirements.

       b.   *The Home State Exception Does Not Apply Because Plaintiffs Have Not Met Their Burden to Provide Evidence that All the Primary Defendants are Residents of the State in Which the Action was Filed.*

The plain language of the statute "requires remand only when *all* of the primary defendants are residents of the same state in which the action was originally filed." *Anthony*, 535 F. Supp. 3d at 515 (citation omitted); *see also Torres v. CleanNet, U.S.A., Inc.*, No. 14-2818, 2014 WL

5591037, at *4 (E.D. Pa. Nov. 2, 2014). The identity of the primary defendants must be determined based on the allegations made in the plaintiffs' complaint. *Torres*, 2014 WL 5591037, at *5.

The "primary defendants" are "those parties that are allegedly directly liable to the plaintiffs" while the "secondary defendants are … those parties sued under theories of vicarious liability or joined for purposes of contribution or indemnification." *Anthony*, 535 F. Supp. 2d at 515-16. Courts in the Third Circuit ask whether "the plaintiffs seek to hold the defendant responsible for its own actions, as opposed to seeking to have it pay for the actions of others," and whether the defendant has potential substantial exposure if found liable. *Torres*, 2014 WL 5591037, at *4-5 (citation omitted). In other words, the primary defendants are "those parties facing direct liability in the instant litigation," though the determination "does not require the Court to make a pre-trial determination as to liability … but rather requires only a review of the complaint to determine which defendants are sued directly." *Anthony*, 535 F. Supp. 2d at 516.

Plaintiffs here fall far short of establishing that *all* the "primary defendants" are Pennsylvania residents. Express Scripts is a citizen of Delaware and Missouri, not a citizen of Pennsylvania, and it is considered a "primary defendant" under applicable law. Plaintiffs seek to hold Express Scripts "directly liable" for its own actions in terminating the Martella's pharmacies from its network. ECF No. 7, ¶ 60 ("Defendants are independently liable for their own misconduct…"); *see also id.*, ¶¶ 6, 23, 31-39, 41-48, 55, 57, 59, 61, 64-69, 75-76, 81. Plaintiffs do not challenge the citizenship of Express Scripts, nor can they. Thus, Express Scripts is a citizen of the States of Delaware and Missouri. According to the allegations in Plaintiffs' Complaint, Plaintiffs seek to recover against all of the named Defendants in the Complaint directly, thereby rendering all the named defendants, including Express Scripts, "primary defendants." *Torres*, 2014 WL 5591037, at *6 (finding an out-of-state defendant was a primary defendant and, thus, the home

state exception to CAFA did not apply); *Anthony*, 535 F. Supp. 2d at 517-18 (finding out-of-state defendants faced direct liability for the alleged tortious action, therefore the home state exception was not applicable). Because at least one of the primary defendants, Express Scripts, is not a citizen of Pennsylvania where the action originated, the home state exception cannot apply.

2.    Plaintiffs Have Not Met Their Burden to Prove the Local Controversy Exception Applies.

"CAFA's legislative history suggests that 'Congress intended the local controversy exception to be a narrow one, with all doubts resolved in favor of exercising jurisdiction over the case.'" *Kelly v. Verizon Pa., LLC*, No. 16-5672, 2019 WL 558100, at *7 (E.D. Pa. Feb. 12, 2019) (quoting *Evans*, 449 F.3d at 1163). For the "local controversy" exception to apply, 28 U.S.C. § 1332(d)(4)(A), Plaintiffs must establish evidence of:

(1)  whether more than two-thirds of the putative class are citizens of Pennsylvania;
(2)  whether the local defendant's conduct forms "a significant basis" for the claims asserted; and
(3)  whether the plaintiffs are seeking "significant relief" from the local defendant.

*Kelly*, 2019 WL 558100, at *7. "Plaintiff bears the burden of proving *all* of the elements of the local controversy exception." *Id.*

The Court should deny Plaintiff's Motion to Remand because Plaintiffs fail to prove all of these elements, namely the first, by a preponderance of the evidence. The requirement that more than two-thirds of the putative class members be citizens of Pennsylvania applies to both the home state exception and the local controversy exception. Thus, because Plaintiffs fail to meet their burden with respect to this element for the home state exception, *see supra*, Section II.B.1.a, then Plaintiffs likewise fail to meet their burden with respect to this element for the local controversy exception. *See, e.g.*, *Schwartz*, 2006 WL 487915, at *6; *see also Hall v. Welch Foods, Inc.*, No. 17–3997, 2017, WL 4422418, at *5 (D.N.J. Oct. 5, 2017) (plaintiff failed to meet its burden

because arguments that "'it would be simply preposterous' for more than one-third of [the putative class] to live outside of New Jersey" are "based on supposition, not evidence" and are insufficient to establish citizenship or support remand under either exception).

"If a party seeking to invoke the local controversy exception has not met its burden with respect to one element, then the exception does not apply and it is unnecessary to examine the remaining elements of the local controversy exception." *Kelly*, 2019 WL 558100, at \*12 (finding the local controversy exception does not apply because plaintiff did not meet one required element of the test) (citation omitted). Plaintiffs here fail to meet their burden of proof on this first element, and thus, the Court need not evaluate any of the other elements of the local controversy exception.

Even if the Court were to evaluate these other elements, Plaintiffs do not submit an iota of evidence to support the other two elements, including whether the local defendant's conduct forms "a significant basis" for the claims asserted and whether the plaintiffs are seeking "significant relief" from the local defendant. Indeed, even a cursory review of Plaintiffs' Complaint—which is the only form of "evidence" before this Court—demonstrates that the majority of Plaintiffs' factual allegations are directed to Express Scripts as the PBM. *See, e.g.*, ECF No. 1-2, Compl. ¶¶ 13-39, 41-48. Therefore, the claims against Express Scripts form the "significant basis" of Plaintiffs' claims and Plaintiffs are seeking "significant relief" from Express Scripts.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court deny Plaintiffs' motion to remand this matter to state court.

Respectfully submitted,

HUSCH BLACKWELL LLP

*/s/ Julie Friedman*
Julie Friedman, PA #76126
1801 Pennsylvania Ave, NW, Ste 1000
Washington, D.C. 20006
202.378.2300
Julie.friedman@huschblackwell.com

Tanya M. Maerz, #63987(MO)
Melissa Baris, #49346(MO)
Christopher Smith, #53266(MO)
8001 Forsyth Boulevard, Suite 1500
St. Louis, Missouri 63105
P: 314.480.1500
F: 314.480.1505
tanya.maerz@huschblackwell.com
melissa.baris@huschblackwell.com
chris.smith@huschblackwell.com

***Attorneys for Defendants Express Scripts, Inc., Cigna Corporation, and Evernorth Health Services***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 22nd day of August, 2025, a copy of the foregoing document was filed with the Clerk of the Court and served upon counsel of record via the Court's electronic filing system.

*/s/ Julie Friedman*