**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GARRETT BOWDEN, individually and on behalf of all others similarly situated, | ) ) No. 3:25-cv-261 |
| | ) |
| Plaintiff, | ) |
| | ) Judge Robert J. Colville |
| v. | ) |
| | ) |
| EXPRESS SCRIPTS, INC., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM ORDER OF COURT

Robert J. Colville, United States District Judge

Before the Court is a "Motion to Remand Case for Lack of Diversity Jurisdiction and/or Subject Matter Jurisdiction Under ERISA and CAFA" ("Motion to Remand") (ECF No. 7) filed by Plaintiff Garrett Bowden, who has asserted individual and class action claims in the operative Complaint (ECF No. 1-2 at 2-21) in this matter. Defendants Express Scripts, Inc. ("ESI"), Cigna Corporation ("Cigna"), and Evernorth Health Services ("Evernorth") (collectively, "Removing Defendants")[1] removed this action from the Court of Common Pleas of Cambria County to this District on August 19, 2025. Plaintiff filed his Motion to Remand the following day. The Motion to Remand has been fully briefed and is ripe for disposition.

## I.    Background

Plaintiff initiated this case by filing his Complaint in the Court of Common Pleas of Cambria County on August 15, 2025. As noted, the Removing Defendants removed the case on August 19, 2025. Upon removal, this case was originally assigned to the Honorable Stephanie L.

---

[1] No appearance has yet been entered on behalf of Defendants UPMC Health Plan ("UPMC"), Highmark Inc. ("Highmark"), or John Does 1-10. That said, Removing Defendants have represented that UPMC and Highmark consented to removal and authorized removing Defendants to inform the Court of the same. ECF No. 1 at ¶ 5.

Haines, who subsequently recused on August 22, 2025 in accordance with 28 U.S.C. § 455. The matter was transferred to the undersigned the same day. Pursuant to a prior briefing schedule, *see* ECF No. 9, Removing Defendants filed their Response in Opposition (ECF No. 16) on August 22, 2025, and Plaintiff filed his Reply (ECF No. 19) on August 25, 2025.

As alleged, Plaintiff and the putative class members are clients and/or patients of Martella's Pharmacies ("Martella's"), which Plaintiff describes as a critical healthcare provider in Cambria County and its surrounding areas that operates six community-based retail pharmacy locations and serves thousands of residents. ECF No. 1-2 ¶¶ 1; 3; 20. Martella's provides home delivery for elderly patients and patients with disabilities; "Medi-Pac" adherence packaging that pre-sorts medications by dose, day, and time; and comprehensive pharmacy services for long-term care homes. *Id.* at ¶ 3. Plaintiff maintains a health benefit plan with UPMC and is a longtime patient of Martella's, an "in-network" pharmacy under the plan. *Id.* at ¶ 8. ESI is a pharmacy benefits manager ("PBM") organized in Missouri[2] and licensed in Pennsylvania that administers pharmacy benefits and maintains a network of pharmacies within which members of health plans that have contracted with ESI can fill prescriptions. *Id.* at ¶ 9; *see also* ECF No. 1 at ¶ 9. Cigna is ESI's parent company and Evernorth is a Cigna subsidiary that manages ESI's operations. ECF No. 1-2 at ¶¶ 10-11. UPMC and Highmark are Pennsylvania health insurance providers that contract with ESI for pharmacy benefits. *Id.* at ¶¶ 12-13.

Plaintiff alleges that Defendants, led by ESI, have announced their intent to terminate their contracts with Martella's and remove Martella's as an in-network pharmacy provider under health plans administered by UPMC and Highmark, and have done so without providing adequate alternative access to care or a path for Martella's to remain an in-network provider. ECF No. 1-2

---

[2] Removing Defendants assert that ESI is incorporated in Delaware and has its principal place of business in Missouri. ECF No. 1 at ¶ 32.

at ¶ 2.  Plaintiff asserts that the putative class members "face imminent loss of access to their medications and pharmacy services due to the Defendants' decision to terminate[, as of August 15, 2025,] Martella's from their provider networks."  ECF No. 1-2 at ¶ 1; 23.

Plaintiff avers that Martella's termination from the UPMC and Highmark pharmacy networks will cause immediate, wide-spread harm to patients with disabilities and those that are elderly or medically fragile, many of whom are unable to travel, manage complicated medication regimens, or find comparable alternatives.  ECF No. 1-2 at ¶¶ 4-5.  He asserts that the putative class members will now no longer be able to fill prescriptions at Martella's or receive home delivery of their medication, and that no meaningful alternatives exist for most putative class members.  *Id.* at ¶ 23-24.  Plaintiff avers that Defendants have provided no justification for Martella's removal from in-network status and have provided no accommodation to preserve access for vulnerable putative class members.  *Id.* at ¶ 26.  Plaintiff asserts that Martella's removal from in-network status will result in medication non-adherence, and, as a result, increase the burden on an already overtaxed rural healthcare system.  *Id.* at ¶¶ 28-29.

Plaintiff's Complaint also sets forth conclusory allegations respecting the general nature of the relationship between PBMs, health insurance providers, pharmacies, and patients.  ECF No. 1-2 at ¶¶ 30-48.  He, again generally, alleges that PBMs, due to their integration with large health care conglomerates, have a tremendous influence over drug pricing and purchasing.  *Id.* at ¶ 35; *see also id.* at ¶ 39 ("PBM Defendants are vertically integrated, meaning, they own or are owned by entities that participate at different levels or points in the supply chain for prescription drugs, and thus, control the market unfairly, often leading to unregulated price fixing, profit-gouging and unfair competition by setting a market which cuts out smaller pharmacies, like Martella's. Decades of intense market consolidation has provided PBM's, not unlike Express Scripts, Inc.,

with vast market power over independent pharmacies, non-affiliated insurance providers, other market participants, and the customer, i.e ., the patients, whose health care and prescription drug provisions, they control.").  Plaintiff alleges that PBMs engage in collusion and price fixing, thus driving up costs for patients, by either refusing to contract with smaller pharmacies or terminating preexisting contracts where smaller pharmacies raise any disagreement with the PBM.  *Id.* at ¶ 45. Plaintiff asserts that small pharmacies bear the brunt of the harm caused by this alleged anticompetitive conduct, and that the harm trickles down to patients, who are presented with less choices and who incur higher costs.  *Id.* at ¶ 48.

In his Complaint, Plaintiff asserts: (1) a claim for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Count I); (2) a claim for violation of the Pennsylvania Pharmacy Benefit Reform Act (Act 77 of 2024) ("Act 77") (Count II); (3) a claim for tortious interference with business relations (Count III); and (4) an independent claim seeking injunctive relief (Count IV).

Plaintiff seeks injunctive relief either preventing or reversing ESI's termination of its contracts with Martella's, as well as damages on behalf of himself and the putative class, which, as of now, would include at least 135 individuals who have contacted Plaintiff's counsel and may eventually include thousands of individuals.  ECF No. 1-2 at ¶¶ 6; 8; 16.  Plaintiff describes the putative class as follows:

> All individuals residing in Pennsylvania who, as of August 2025, are patients of Martella's Pharmacies and are enrolled in a health plan administered by UPMC Health Plan or Highmark Inc. using Express Scripts or Evernorth as the pharmacy benefit manager.

*Id.* at ¶ 15.  As to questions of law and fact common to the putative class, Plaintiff provides:

> There are common questions of law and fact, including: Whether the removal of Martella's violates patient rights or public policy; Whether patients were given adequate notice or alternatives; Whether the removal creates pharmacy deserts and

increases medical risk; Whether the removal will overrun an already exhausted rural hospital system.

*Id.* at ¶ 17.

As the basis for removal of this case to federal court, Removing Defendants provided the following in their Notice of Removal:

> Defendants state that this Court has original jurisdiction over this matter, pursuant to: (1) the Employee Retirement Income Security Act of 1973, 29 U.S.C. § 1001 et seq ("ERISA"), because the claims relate to the administration of benefits under certain Plaintiffs' employee benefit plans; and (2) the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because this is a putative class action involving at least 100 putative class members, at least one Defendant is diverse from at least one putative class member, and the alleged amount in controversy exceeds $5 million.

ECF No. 1 at 1. More specifically, Removing Defendants assert that this case involves claims to recover benefits and/or enforce or clarify rights under employee benefit plans as defined by 29 U.S.C. § 1002(1) and governed by ERISA, and that federal question jurisdiction exists because Section 502(a) of ERISA preempts state law claims concerning benefit determinations under an ERISA plan. *Id.* at ¶¶ 12-13. Removing Defendants argue that, because Plaintiff's claims center on an assertion that Martella's should remain part of the putative class members' in-network plans, Plaintiff's claims arise out of their health insurance plans and necessarily depend upon interpretation of rights and benefits under the plans and are thus preempted by ERISA. *Id.* at ¶ 18.

With respect to CAFA, Removing Defendants argue that, in addition to or in the alternative to ERISA preemption, each of the requirements for removal under CAFA is met in this case. Initially, the putative class has at least 100 members according to Plaintiff's Complaint, and Plaintiff does not dispute that this requirement has been established. ECF No. 7 at ¶ 35. Removing Defendants argue that minimal diversity exists because Plaintiff has pled facts that tend to establish that he and the putative class members are Pennsylvania residents and that ESI is a citizen of either

Delaware or Missouri. *See* ECF No. 1 at ¶¶ 30-35. They further argue that, "[b]ecause at least one putative class member is a citizen of a state different from at least one Defendant, there is minimal diversity among the parties to this case as required under CAFA." *Id.* at ¶ 35. Plaintiff does not dispute that the parties are minimally diverse. ECF No. 7 at ¶ 35. Finally, Removing Defendants assert that the alleged amount in controversy exceeds $5 million because Plaintiff seeks compensatory damages for increased costs and future injuries (including increased emergency department visits, hospitalizations, and potential death), punitive damages, treble damages, injunctive relief, and attorney's fees on behalf of himself and potentially thousands of putative class members. ECF No. 1 at ¶ 42.

Prior to removal, Plaintiff, acting ex parte, filed and obtained immediate preliminary injunctive relief from the Cambria County Court of Common Pleas. ECF No. 1 at ¶ 4-5; ECF No. 1-2 at 32-34. The court's order provided: "Accordingly, the Defendants are directed by the Court not to terminate Martella's Pharmacies from their network of pharmacies and maintain the status quo with Martella's Pharmacies until further Order of Court." ECF No. 1-2 at 32. That Order remains in effect at this juncture, as the matter was removed before a hearing on the motion for preliminary injunction was scheduled to take place. ECF No. 7 at ¶¶ 2-3.

## II.    Legal Standard

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "The propriety of removal . . . depends on whether the case originally could have been filed in federal court." *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163, 118 S.Ct. 523, 139 L.Ed.2d 525

(1997). Original federal court jurisdiction can be based either on federal question jurisdiction or on diversity of citizenship jurisdiction. *USAA Fed. Sav. Bank v. Belfi*, No. CV 19-3607, 2020 WL 5763585, at *2 (E.D. Pa. Sept. 28, 2020). "Federal courts are courts of limited jurisdiction." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 102 S. Ct. 2099, 2104 (1982). "[T]here is no presumption that they have subject matter jurisdiction to adjudicate a particular case." *Allison v. Chesapeake Energy Corp.*, No. CIV.A. 12-0900, 2013 WL 787257 (W.D. Pa. Jan. 29, 2013) (quoting *Martin v. Wal-Mart Stores, Inc.,* 709 F. Supp. 2d 345, 346 (D.N.J. 2010)).

"When assessing a plaintiff's motion to remand, 'removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" *Belfi*, 2020 WL 5763585, at *2 (quoting *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985)). As such, the Court views all removals with suspicion and heavily favors remand. "[T]he party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

The facts available to the Court for a remand analysis are limited, and heavily favor the allegations of one side over the other. *Angus v. Shiley Inc.*, 989 F.2d 142, 145 (3d Cir. 1993). The Court's inquiry "must focus on the plaintiff's complaint at the time the petition for removal was filed" and "must accept as true all factual allegations in the complaint." *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987).

## A. ERISA Preemption

"Ordinarily, determining whether a particular case arises under federal law turns on the 'well-pleaded complaint' rule." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004). "Under

the 'well-pleaded complaint rule, the plaintiff is ordinarily entitled to remain in state court so long as its complaint does not, on its face, affirmatively allege a federal claim." *Pascack Valley Hosp. v. Loc. 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 398 (3d Cir. 2004). The existence of a federal defense, such as preemption, does not appear on the face of the complaint and thus normally does not establish a basis for removal. *See id.*; *Davila*, 542 U.S. at 207.

An exception to the well-pleaded complete rule exists where the concept of complete preemption is applicable, and the Supreme Court of the United States has explained:

> "When a federal statute wholly displaces the state-law cause of action through complete pre-emption," the state claim can be removed. This is so because "[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." ERISA is one of these statutes.

*Davila*, 542 U.S. at 207–08 (quoting *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003)). "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Id.* at 208. "To this end, ERISA includes expansive pre-emption provisions which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" *Id.* (quoting *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523 (1981)).

ERISA contains an integrated enforcement mechanism, Section 502(a), 29 U.S.C. § 1132(a), which establishes:

> [A] comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted . . . provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.

*Davila*, 542 U.S. 200, 208–09 (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987)) (internal quotation marks omitted).  "Therefore, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."  *Id.* at 209.  The Supreme Court has further explained:

> The pre-emptive force of ERISA § 502(a) is still stronger.  In *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65–66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), the Court determined that the similarity of the language used in the Labor Management Relations Act, 1947 (LMRA), and ERISA, combined with the "clear intention" of Congress "to make § 502(a)(1)(B) suits brought by participants or beneficiaries federal questions for the purposes of federal court jurisdiction in like manner as § 301 of the LMRA," established that ERISA § 502(a)(1)(B)'s pre-emptive force mirrored the pre-emptive force of LMRA § 301.  Since LMRA § 301 converts state causes of action into federal ones for purposes of determining the propriety of removal, *see Avco Corp. v. Machinists*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), so too does ERISA § 502(a)(1)(B).  Thus, the ERISA civil enforcement mechanism is one of those provisions with such "extraordinary pre-emptive power" that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule."  *Metropolitan Life*, 481 U.S., at 65–66, 107 S.Ct. 1542.  Hence, "causes of action within the scope of the civil enforcement provisions of § 502(a) [are] removable to federal court."  *Id.*, at 66, 107 S.Ct. 1542.

*Id.*

**B.  CAFA**

Initially, no anti-removal presumption attends cases involving CAFA.  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013)).  Under CAFA, a federal court has original jurisdiction over actions that satisfy the statute's special diversity and procedural requirements.  Specifically, federal district courts have original jurisdiction over class action cases arising under state law when: (1) there are at least 100 members of the class; (2) there is minimal diversity; and (3) the

amount in controversy, as aggregated across all individual claims, exceeds the sum or value of $5 million (exclusive of interests and costs). 28 U.S.C. § 1332(d)(2).

A defendant may assert the purported amount in controversy in its Notice of Removal if the Pennsylvania state court complaint does not provide a demand for a specific sum. 28 U.S.C. §1446(c)(2)(B); *see also* Pa.R.C.P. 1021(b) ("Any pleading demanding relief for unliquidated damages shall not claim a specific sum."); *Scaife v. CSX Transp. Inc.*, No. 3:19-cv-60, 2019 WL 3353727, at *12 (W.D. Pa. July 25, 2019). As evidence "of the jurisdictional amount, the Court may consider the complaint, the notice of removal, and subsequent submissions related to the motion to remand." *Klaphake v. Columbia Gas Transmission, LLC*, No. 17-cv-1359, 2018 WL 1736791, at *1 (W.D. Pa. Apr. 11, 2018).

For removal actions under 28 U.S.C. §1446, courts within the Third Circuit have applied several tests to determine whether the amount in controversy surpasses the jurisdictional threshold. *See Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 500 (3d Cir. 2014). These three tests include (1) the *McNutt/Samuel-Bassett* preponderance test; (2) the *Red Cab/Samuel-Bassett* legal certainty test; and (3) the *Morgan* legal certainty test. *Id.*

The *McNutt/Samuel-Bassett* test applies where a defendant raises factual arguments in their notice of removal against the plaintiff's purported amount in controversy. *Judon*, 773 F.3d at 504 (quoting *Samuel-Bassett v. Kia Motors Am., Inc.*, 357 F.3d 392, 298 (3d Cir. 2004) and *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 179-80 (1936)). Under this test, the party asserting jurisdiction must justify their position by a preponderance of the evidence standard. *See McNutt*, 298 U.S. at 189 (U.S. 1936). Satisfying the preponderance of the evidence standard has been defined as "proof to a reasonable probability that jurisdiction exists." *Frederico*, 507 F.3d at 196, n.6.

The *Red Cab/Samuel-Bassett* test applies where the alleged facts are uncontested for purposes of calculating the amount in controversy, or where the Court has already made a factual determination under the *McNutt* standard. *Judon*, 773 F.3d at 501. The calculation is, therefore, determined "in whole or in part" by applicable law. *Id.* at 505. The *Red Cab* challenger to jurisdiction has the burden of proving to a legal certainty that the amount in controversy could not exceed the threshold. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938); *see also Frederico*, 507 F.3d at 195.

The *Morgan* test applies where a plaintiff's complaint expressly limits the amount in controversy below the threshold to avoid federal jurisdiction. *Morgan v. Gay*, 471 F.3d 469, 474 (3d Cir. 2006). In *Morgan*, the plaintiff stated, in his complaint, that any relief sought was not to exceed the $5 million threshold. *Morgan v. Gay*, Civ. No. 3:06-cv-1371, 2006 WL 2265302, at *1 (D.N.J. Aug. 7, 2006) ("however, the total amount of such monetary relief for the class as a whole shall not exceed $5 million in sum or value."). Under those circumstances, the Third Circuit held that the removing defendant bears the burden to prove to a legal certainty that the complaint exceeds the requisite amount in controversy. *Morgan*, 471 F.3d at 475.

## III.    Discussion

In his Motion to Remand, Plaintiff argues that removal is not appropriate under either ERISA or CAFA, and that the case should thus be remanded to the Court of Common Pleas of Cambria County because this Court does not have subject matter jurisdiction. He argues that his claims do not implicate ERISA because they do not assert violations of his or the putative class members' health insurance plans, and instead involve allegations of unfair competition, collusion, patient steering, and price fixing. ECF No. 7 at ¶¶ 6-7. Plaintiff asserts that the issue of ERISA preemption is a red herring because his and the putative class members' claims do not involve a

11

benefits dispute and will not require interpretation of Plaintiff's or the putative class members' benefits under their plans, but rather involve independent state duties under the UTPCPL, Act 77, and Pennsylvania tort law.  *Id.* at ¶¶ 8-9.  He asserts that the claims at issue have nothing to do with the benefit plans themselves, but rather the harm that will result from ESI's termination of its contract with Martella's, which Plaintiff characterizes as impermissible interference with medical treatment access on the part of Defendants.  *Id.* at ¶¶ 16-22.

With respect to CAFA removal, Plaintiff argues that the Complaint does not meet CAFA's requirements and that, alternatively, it falls within CAFA's "local controversy" and "home state" exceptions under 28 U.S.C. § 1332(d)(4).  ECF No. 7 at ¶ 26.  Plaintiff asserts that it is not clear that the amount in controversy in this matter exceeds $5 million, and that remand is thus appropriate.

### A.  ERISA Preemption

Under Section 502(a) of ERISA, a participant or beneficiary of an employee benefit plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]"  29 U.S.C. § 1132(a).  "If an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)."  *Davila*, 542 U.S. at 210.  It follows that a case is only removable under ERISA preemption where: (1) the plaintiff could have brought their claim under Section 502(a); and (2) no other legal duty supports the plaintiff's claims.  *Pascack Valley Hosp.*, 388 F.3d at 400.  Plaintiff argues that neither removal requirement is met in this case.

Plaintiff's claims are preempted by ERISA. Initially, Plaintiff seeks relief on behalf of himself and a group of potentially thousands of individuals based upon their purported inability to acquire prescription medications from Martella's pursuant to their health benefit plans following Defendant's removal of Martella's as an in-network pharmacy. Each of the putative class members has a health insurance plan with UPMC or Highmark, and Plaintiff takes issue with Defendants' removal of Martella's as an in-network provider, arguing that the same was done without adequate notice and without appropriate alternatives. Plaintiff asserts that Martella's removal will result in significant harm, including increased costs, increased risk of medical harm, and a loss of convenience and choice for the putative class members. In addition to damages caused by their inability to obtain their prescription benefits through Martella's, they seek Martella's reinstatement as an in-network pharmacy to prevent future damages.

Removing Defendants have cited to case law that suggests that claims such as those at issue herein are preempted by ERISA. *See Waldschmidt v. Aetna U.S. Healthcare*, 225 F. Supp. 2d 560, 565 (W.D. Pa. 2002) (finding claims completely preempted and explaining: "The only role Aetna could have played is in designating one facility 'in-network' and another facility 'out-of-network.' Decisions of whether certain facilities are in-network or out-of-network involve the administration of benefits or eligibility decisions, not treatment decisions."); *see also Pharm. Care Mgmt. Ass'n v. Mulready*, 78 F.4th 1183, 1198 (10th Cir. 2023), *cert. denied*, No. 23-1213, 2025 WL 1787716 (U.S. June 30, 2025) (addressing express, as opposed to complete, preemption, but explaining: "And either way, ERISA preempts these provisions because a pharmacy network's scope (which pharmacies are included) and differentiation (under what cost-sharing arrangements those pharmacies participate in the network), are key benefit designs for an ERISA plan."); *McKee Foods Corp. v. BFP Inc.*, No. 1:21-CV-279, 2025 WL 968404, at *9 (E.D. Tenn. Mar. 31, 2025)

("This argument, however, ignores the fact that the scope of an ERISA plan's provider network (in this case a pharmacy network) is a key aspect of plan administration: how the plan structures and designs its benefits.").[3]  The status of Martella's, or any pharmacy, as an in-network pharmacy under the putative class members' health benefit plans is a benefit under the plans, and the putative class members clearly seek to enforce and/or clarify their rights under their plans in this lawsuit.[4]  Plaintiff's claims implicate the administration of a health benefit plan, i.e., which pharmacies qualify as "in-network" pharmacies.  As such, Plaintiff could have brought this action under Section 502(a), and the first complete preemption requirement is met in this case.

Further, at least as currently pled and argued, the Court finds that no other legal duty supports Plaintiff's claims.  With respect to his tortious interference claim, Plaintiff seemingly suggests that it is the putative class's intention to enforce the contractual rights of Martella's through the class's lawsuit.  *See* ECF No. 19 at 9 ("Finally, the primary, underlying dispute in this case is, actually, between Express Scripts and Martella's Pharmacy, where Martella's, already an in-network provider, is being wrongfully dropped by Express Scripts in breach of their respective contractual agreements, which represents a cause of action (breach of contract) independent of any ERISA plans covering any of the Plaintiffs. This contractual breach, governed by state law, not

---

[3] While Plaintiff attempts to distinguish these cases, he cites to no case law directly supporting his position that he can maintain his lawsuit under the UTPCPL, Act 77, or under a theory of tortious interference.

[4] The Court finds the following argument raised by Removing Defendants to be well-made and persuasive:

> The gravamen of Plaintiffs' claim is that Martella's will no longer be in the Plan's pharmacy network.  To be clear, the issue is *not* whether Plaintiffs are able to fill their prescriptions at Martella's.  Plaintiffs are free to fill their prescriptions wherever they want.  The issue is whether or how much the Plan will pay for prescriptions that Plaintiffs fill at Martella's under the Plan's pharmacy benefits, which turns upon whether Martella's is within ESI's contracted pharmacy network.  And courts are clear that a benefit plan's determination of which providers are included in its network fit squarely within the administration of benefits that are governed by ERISA.

ECF No. 16 at 6.

plan terms, further precludes complete preemption under § 502(a)(l)(B)"); *see also id.* at 14 ("Plaintiffs do not seek to force Express Scripts to modify its network design, include additional pharmacies, or alter the terms of any employer-sponsored plan.  Martella's is already an in-network provider, and the dispute centers on whether Express Scripts'[s] decision to 'drop' Martella's breaches their existing contractual duties to Martella's - a question of state contract law, not plan administration.").

If the only controversy at issue in this case exists between Martella's, a non-party, and ESI, the Court finds difficulty in identifying how Plaintiff or the putative class could have standing to pursue a contract claim, whether breach or tortious interference, where the class members are not parties to the contract at issue.  *See Clarity Sports Int'l LLC v. Redland Sports*, 400 F. Supp. 3d 161, 178 (M.D. Pa. 2019) ("To state a viable claim for tortious interference with existing contractual relationships, a plaintiff must allege facts in support of the following elements: (1) the existence of a contractual . . . or economic relationship between the plaintiff and a third party . . . .").[5]  "A plaintiff 'cannot circumvent the preemptive reach of ERISA by artful pleading.'" *Waldschmidt*, 225 F. Supp. at 564–65 (quoting *Roark v. Humana, Inc.*, Civ. No. 00–2368, 2001 WL 585874 at *1 (N.D. Tex. May 25, 2001)).  The contracts under which the putative class may sue are their health benefit plans, not a contract between a non-party and the Defendants.

Plaintiff asserts that there is a fundamental difference between an individual who sues his health insurance provider where coverage is denied and one who sues their provider for inconvenience and adverse consequences, such as having to drive longer distances, that result from

---

[5] To the extent Plaintiff pleads that he and each of the putative class members have individual contracts with Martella's with which Defendants have interfered, he has not alleged facts that would support such a finding.  To the contrary, the contractual relationships at issue appear plain: (1) health benefit plans between the putative class members and UPMC or Highmark; (2) contracts between UPMC and ESI and Highmark and ESI for the administration of pharmacy benefits; and (3) contracts between ESI (and possibly UPMC and Highmark) and Martella's governing Martella's status as an in-network provider.

a change in in-network pharmacy availability.  The Court disagrees.  Each such individual is seeking to enforce their benefits under their plan.  Plaintiff himself pleads that Defendants acted wrongfully "by terminating Martella's from their provider networks, effective August 15, 2025, without *justification or adequate patient notice*, and *without providing comparable alternative pharmacy services*."  ECF No. 1-2 at ¶ 81; *see also id.* at ¶ 17 (citing the issues of whether Martella's removal violated patients' rights and whether patients were given adequate notice or alternatives as common questions of law and fact).  In this Court's estimation, such an assertion clearly implicates duties, such as the provision of notice or suitable alternatives, purportedly owed by the providers under the putative class members' plans.  Plaintiffs do not contest that the pharmacy network available to the putative class members is a benefit under their plains. Plaintiff's claims plainly seek enforcement of the benefits they are owed under their plans, i.e., the reinstatement of Martella's or the provision of a suitable alternative, and/or clarification as to whether the manner and circumstances of Martella's removal as an in-network pharmacy was consistent with the putative class members health benefit plans.

Plaintiff also asserts that he and the putative class "do not seek to force Express Scripts to modify its network design, include additional pharmacies, or alter the terms of any employer-sponsored plan." ECF No. 19 at 14.  To the contrary, Plaintiff seeks to have Martella's reinstated as an in-network pharmacy following ESI's decision to remove Martella's under the terms of ESI's and Martella's contract.[6]  Plaintiff's attempt to maintain the status quo in the face of ESI's decision seems to be a plain attempt to modify/control the scope of ESI's pharmacy network.  *See* ECF No. 7 at ¶ 8 ("Class Plaintiffs are challenging the PBM, ESI, as well as the associated health plans to restrict termination of the current in-network plans.").  As noted, such relief implicates the

---

[6] Again, if ESI's actions are in breach of its contract with Martella's, it is Martella's, not Plaintiff, who may seek redress for such a breach.

administration of a health benefit plan, i.e., which pharmacies qualify as "in-network" pharmacies. Plaintiff's tortious interference claim is preempted by ERISA.

Further, while Plaintiff asserts that he has contemplated filing an amended complaint alleging a breach of contract claim based upon a "third-party beneficiary theory," no such claim is currently pending before the Court. As it stands, the Court finds that Plaintiff's claims do not arise out of contract law, and any such claim is preempted by ERISA.

Plaintiff's claim under the UTPCPL is preempted for the same reasons discussed above. Plaintiff asserts that:

> Defendants have engaged in unfair and deceptive practices by quietly and discreetly removing a compliant in-network pharmacy from coverage, causing patients to lose access to needed medication and services, without any advanced notice, discussion or provision of alternative methods and means to meet their immediate, short-term, near-term and long-term needs.

> The Plaintiffs justifiably relied on the Defendants' deception since, upon their information, knowledge and belief, their health insurance and pharmaceutical coverage identified Martella's as an "in-network" provider of medication.

ECF No. 1-2 at ¶¶ 55-56. Plaintiff cites to the putative class members' *health benefit plans* in explaining the expectation that they would be able to utilize Martella's as an in-network pharmacy. The issue in this case, as pled by Plaintiff, is whether Defendants' removal of Martella's as an in-network provider complied with the requirements of the putative class members' health benefit plans. Thus, the putative class members are suing to enforce or clarify their rights under their health benefit plans, and their UTPCPL claim is thus preempted by ERISA.[7]

---

[7] Courts also routinely find claims under the UTPCPL involving health insurance benefits to be expressly preempted by ERISA. *See Breland v. Liberty Life Assur. Co. of Bos.*, No. CIV.A. 14-352, 2014 WL 5795681, at *2 (W.D. Pa. Nov. 6, 2014) ("Lastly, Count IV, which alleges that Defendant violated the UTPCPL, also 'relates to' the Disability Plan, and is therefore expressly preempted under § 514(a)."); *see also Kirshy v. Life Ins. Co. of N. Am.*, No. 3:10-CV-2345, 2011 WL 1691097, at *3 (M.D. Pa. May 4, 2011) ("Here, Kirshy has brought claims for breach of contract, bad faith, and the UTPCPL. These three claims are all preempted by § 514(a)."); *Haase v. Metro. Life Ins. Co.*, 198 F. Supp. 3d 412, 423 (E.D. Pa. 2016) ("Although the Third Circuit has not determined whether ERISA expressly preempts the UTPCPL, a number of courts in this District have concluded that it does.").

As to Plaintiff's purported claim under Act 77, which covers any contract between a pharmacy or a PBM and a health insurer or a health benefit plan, 40 P.S. § 4502, Plaintiff seemingly acknowledges that the Act does not provide pharmacy patients with a private civil cause of action against PBMs or health care providers.  He provides: "Although Act 77 primarily provides for enforcement by the Pennsylvania Insurance Department (PID), Defendants' violations support Plaintiffs' claims under the UTPCPL by demonstrating unfair and deceptive conduct, as Act 77 establishes a public policy standard for PBM behavior."  ECF No. 1-2 at ¶ 77.

Act 77 itself provides that "[t]he [Pennsylvania Insurance Department] may investigate and enforce the provisions of this act only insofar as the actions or inactions being investigated relate to prescription drug coverage under a health benefit plan."  40 P.S § 4551(a).  As Plaintiff notes, the Act imposes requirements on PBMs respecting network adequacy and patient steering, i.e., the concerns raised in both Plaintiff's UTPCPL and Act 77 claims, and provides for certain penalties that may be imposed, including, inter alia, "[a] cease and desist order" and "reimbursement to an *insured*, pharmacy or dispenser that has incurred a monetary loss as a result of a violation of this act."  40 P.S § 4551(d) (emphasis added).[8]  Plaintiff has all but conceded that Act 77 does not create a private cause of action for pharmacy patients, and certainly offers no substantive support for a conclusion to the contrary.  The Court has not located any authority supporting an independent cause of action under Act 77.  For that reason, Act 77 cannot support Plaintiff's claim.  Even if that were not the case, Plaintiff's Act 77 claim mirrors his UTPCPL claim and would be preempted for the reasons discussed above.

---

[8] It bears noting that the Insurance Department's "Consumer Help Center" contains an option for consumers, presumably including those aggrieved by a potential violation of Act 77, to submit a complaint with, or ask a question of, the Department. https://perma.cc/4KFJ-HHND.

In short, Plaintiff's claims arise out of their health benefit plans and necessarily depend upon interpretation of the rights and benefits under the plans, and they are thus preempted by ERISA. Whether Defendants improperly removed Martella's as an in-network option or failed to provide adequate notice or reasonable alternatives, Plaintiff seeks to enforce or clarify his benefits, and no other independent legal duty is implicated. As such, complete preemption under ERISA applies, and the Motion to Remand will be denied on that basis.

### B.  CAFA Removal

Given the Court's holding above, a detailed analysis on the issue of CAFA removal is not in the interest of efficient litigation or judicial economy. That said, the Court believes that removal under CAFA would also be appropriate, and offers the following brief explanation for the basis of that belief. The only CAFA requirement at issue in this matter is the $5 million amount in controversy requirement. Coupled with that issue is the question of which legal standard for determining the amount in controversy applies. As it stands, Plaintiff's Complaint has not limited the putative class's damages below the jurisdictional threshold, though the Court acknowledges that Plaintiff expresses an intent to do so in his Motion to Remand. Accordingly, at least for now, the *Red Cab/Samuel-Bassett* legal certainty test would apply in this case because the calculation of the amount in controversy turns on legal arguments. As noted, the *Red Cab* challenger to jurisdiction has the burden of proving to a legal certainty that the amount in controversy could not exceed the threshold.[9]

Upon removal, the defendant may present an estimated amount in controversy based on a "reasonable reading of the value of the rights being litigated," *Judon*, 773 F.3d at 407, and not the "low end of an open-ended claim," *Werwinski v. Ford Motor Co*., 286 F.3d 661, 666 (3d Cir.

---

[9] Plaintiff relies upon the incorrect standard in arguing that *Defendants* bear the burden on the amount in controversy issue, and thus, unsurprisingly, offers little in the way of argument that could satisfy *his* burden on the issue.

2002).    As noted, where a plaintiff seeks non-monetary relief, the amount in controversy is calculated based on "the value of the object of the litigation." *Columbia Gas*, 62 F.3d at 541; *see also id.* at 539 ("[W]e measure the amount in controversy by the value of the rights which the plaintiff seeks to protect.").

In this case, Plaintiff seeks compensatory damages, punitive damages, treble damages, injunctive relief, and attorney's fees on behalf of thousands of class members.[10]    Plaintiff asserts the possibility of severe injury, including death, as a result of Defendants' actions.    The possibility of both punitive and treble damages suggests that the putative class's recovery could prove substantial if successful.    Plaintiff seeks injunctive relief that would require a PBM to reengage in a contract with a pharmacy group that serves thousands of individuals that ESI intends to or has already terminated.    Class action litigation is complicated, and the attorney's fees in this case could also prove substantial.    Aggregating these requests together, it is not clear to a legal certainty that the amount in controversy could not exceed the jurisdictional threshold.

Plaintiff, who bears the burden of establishing the applicability of a CAFA exception, offers little in arguing the applicability of the "home state" and/or "local controversy" exceptions, and, the Court perceives little value to addressing those exceptions herein.    Should this issue become a focus in this litigation in the future following the Court's holding below, the Court anticipates that each party will be prepared to address the issue fulsomely.

---

[10] The Court acknowledges that, if it is correct about ERISA preemption, certain of the types of relief sought by Plaintiff will be unavailable.  In this way, this analysis is offered to explain why removal would be appropriate even in the absence of preemption.

## IV.     Order of Court

For the reasons discussed above, the Motion to Remand is denied.  Plaintiff is granted leave to file an amended complaint asserting a claim under ERISA.  In an abundance of caution, the Court permits Plaintiff a final opportunity to, in the alternative, attempt to address the issues discussed herein by way of an amended complaint.  Any amended complaint shall be filed by October 7, 2025.  Failure to file an amended complaint will result in dismissal of this matter with prejudice.

BY THE COURT:

/s/Robert J. Colville
Robert J. Colville
United States District Judge

DATED: September 16, 2025

cc: All counsel of record