**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GARRETT BOWDEN, individually and on behalf of all others similarly situated, | ) ) ) | No. 3:25-cv-261 |
| Plaintiff, | ) ) | |
| v. | ) ) | Judge Robert J. Colville |
| EXPRESS SCRIPTS, INC., et al., | ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM OPINION**

Robert J. Colville, United States District Judge

Before the Court are the following motions filed by the parties in the above-captioned matter: (1) a Renewed Motion for Remand (ECF No. 38) filed by Plaintiff Garrett Bowden, who brings claims individually and on behalf of a potential class in the operative Amended Complaint (ECF No. 36); (2) a Motion seeking preliminary injunctive relief ("PI Motion") (ECF No. 39) filed by Plaintiff;[1] and (3) a Motion to Dismiss (ECF No. 41) the Amended Complaint filed by Defendants Express Scripts, Inc. ("ESI"), Cigna Corporation ("Cigna"), and Evernorth Health Services ("Evernorth") (collectively, "Moving Defendants")[2]. The Moving Defendants removed

---

[1] Because Plaintiff seeks relief against only Defendant ESI by way of its PI Motion, *see* Proposed Order, ECF No. 39-5, and because ESI has been served and has appeared in this matter, the Court need not consider Plaintiff's request for a temporary restraining order. In any event, the same legal standard applies. *Saluck v. Rosner*, C.A. No. 98-5718, 2003 WL 559395, at *2 (E.D. Pa. Feb. 25, 2003).

[2] No appearance has yet been entered on behalf of Defendants UPMC Health Plan ("UPMC), Highmark Inc. ("Highmark"), or John Does 1-10.

this action from the Court of Common Pleas of Cambria County to this District on August 19, 2025. Plaintiff filed a motion for remand the following day. The Court denied that motion for remand by way of a September 16, 2025 Memorandum Order (ECF No. 23), but did so without prejudice to Plaintiff amending his original complaint to attempt to address the issues addressed by the Court in the Memorandum Order. Plaintiff filed his Amended Complaint on October 7, 2025. The Court subsequently issued a Memorandum Order (ECF No. 37) in response to a motion for clarification filed by the Moving Defendants. In that Memorandum Order, the Court clarified that an order issued by the Cambria County Court of Common Pleas granting an ex parte request by Plaintiff for preliminary injunctive relief expired prior to the Court's September 16, 2025 Memorandum Order, and that the preliminary injunctive relief was not extended prior to expiration.[3] Plaintiff then filed his Renewed Motion for Remand and his PI Motion, and Moving Defendants filed their Motion to Dismiss the Amended Complaint. These Motions have been fully briefed and are ripe for disposition.

## I.    Background[4]

Plaintiff alleges that he and the putative class members are clients and/or patients of Martella's Pharmacies ("Martella's"), which Plaintiff describes as a critical healthcare provider in Cambria County and its surrounding areas that operates six community-based retail pharmacy locations and serves thousands of Cambria County and neighboring community residents. Am. Compl. ¶ 1; (first) ¶ 25; (second) ¶ 20. Martella's provides home delivery for elderly patients and

---

[3] The order provided: "Accordingly, the Defendants are directed by the Court not to terminate Martella's Pharmacies from their network of pharmacies and maintain the status quo with Martella's Pharmacies until further Order of Court." ECF No. 1-2 at 32.

[4] Many of the operative facts remain unchanged in the Amended Complaint. The Court notes that Paragraph 25 of the Amended Complaint is directly followed by a second Paragraph 20, with the following paragraphs being listed in sequential order beginning at the second Paragraph 21. The Court will cite to the Amended Complaint herein, and will note instances of a "second" paragraph in the interest of clarity.

patients with disabilities; "Medi-Pac" adherence packaging that pre-sorts medications by dose, day, and time; and long-term-care pharmacy services to nursing homes and group residences. *Id.* at (second) ¶ 20. Plaintiff maintains a health benefit plan with UPMC and is a longtime patient of Martella's Windber location. *Id.* at ¶ 13. ESI is a pharmacy benefits manager ("PBM") organized in Missouri[5] and licensed in Pennsylvania that administers pharmacy benefits and maintains a network of pharmacies within which members of health plans that have contracted with ESI can fill prescriptions. *Id.* at ¶ 14; *see also* ECF No. 1 at ¶ 9. Cigna is ESI's parent company and Evernorth is a Cigna subsidiary that manages ESI's operations. Am. Compl. ¶¶ 15-16, ECF No. 36. UPMC and Highmark are Pennsylvania health insurance providers that contract with ESI for the management and provision of pharmacy benefits for UPMC's and Highmark's members, including the putative class members. *Id.* at ¶¶ 17-18.[6]

ESI and Martella's entered into provider agreements materially identical to Exhibit A to the Amended Complaint whereby Martella's agreed to dispense covered medications to eligible consumers whose transactions were processed through Defendants' networks. Am. Compl. (second) ¶ 25; ¶ 55, ECF No. 36. Plaintiff avers that these agreements were "designed and intended to ensure that Pennsylvania consumers could obtain medications safely, affordably[,] and locally through community pharmacies such as Martella's." *Id.* Plaintiff alleges that the Defendants, led by ESI, announced their intent to exclude Martella's from participation in their Pennsylvania pharmacy arrangements effective August 15, 2025, "without legitimate business justification, without reasonable transparency to affected consumers, and without implementing any transitional

---

[5] Moving Defendants assert that ESI is incorporated in Delaware and has its principal place of business in Missouri. ECF No. 1 at ¶ 32.

[6] As the Court previously explained, the contractual relationships at issue in this case are: (1) health benefit plans between the putative class members and UPMC or Highmark; (2) contracts between UPMC and ESI and Highmark and ESI for the administration of pharmacy benefits; and (3) contracts between ESI (and possibly UPMC and Highmark) and Martella's governing Martella's status as an in-network provider.

safeguards required under Pennsylvania law governing fair trade and consumer protection." *Id.* at ¶ 2. ESI dropped Martella's as an in-network pharmacy on October 21, 2025. ECF No. 49 at ¶ 8. Plaintiff asserts that the putative class members' access to affordable, community-level pharmacy services has been and is threatened by the Defendants' decision to exclude Martella's from participation in the commercial pharmacy marketplace. Am. Compl. ¶ 1, ECF No. 36

Plaintiff avers that Martella's exclusion from the UPMC and Highmark pharmacy networks has caused the putative class members to suffer increased out-of-pocket costs, loss of home delivery and Medi-Pac adherence services, travel burdens, loss of pharmacist counseling, and increased health risks from non-adherence. Am. Compl. ¶ 72, ECF No. 36. He asserts that the putative class members will now no longer be able to fill prescriptions or receive home delivery of their medication at or through Martella's, and that no meaningful alternatives exist for most putative class members. *Id.* at ¶ 2; (second) ¶ 22; ¶ 121.

Like his original complaint, Plaintiff's Amended Complaint sets forth conclusory allegations respecting the general nature of the relationship between PBMs, health insurance providers, pharmacies, and patients. Am. Compl. ¶¶ 32-48, ECF No. 36. He, again generally, alleges that PBMs, due to their vertical integration with large health care insurers, have control over pricing and network access. *Id.* at ¶ 36; *see also id.* at ¶ 41 ("In recent years, PBMs have increasingly relied on 'specialty drugs,' high-cost medications requiring special handling, to generate revenue. Most large PBMs, including [ESI] own or control their own specialty pharmacies, allowing them to steer patients away from community pharmacies and capture additional profit."). Plaintiff alleges that "the influence of PBMs extends to every level of the drug-distribution process[,]" and that, "[b]y controlling reimbursement rates and eligibility for network participation, PBMs determine which pharmacies can viably serve local patients,

4

including those in rural Pennsylvania communities like Cambria County." *Id.* at ¶ 37.  Plaintiff

asserts that small pharmacies such as Martella's bear the brunt of the harm caused by this alleged

anticompetitive conduct, and that the harm trickles down to patients, who face higher costs,

reduced access to healthcare, and disruption of their established care relationships.  *Id.* at ¶ 48.

In his Complaint, Plaintiff asserts: (1) a claim for breach of contract --

third party beneficiary (Count I); (2) a claim for tortious interference with prospective economic

relations (Count II); and (3) a claim for violation of the Pennsylvania Unfair Trade Practices and

Consumer Protection Law ("UTPCPL") (Count III).  Plaintiff avers that the putative class does

"not seek to recover benefits or enforce plan terms[,]" but rather that "they seek to enforce

independent contractual and statutory duties owed to them as third-party beneficiaries and

Pennsylvania consumers."  Am. Compl. ¶ 31, ECF No. 36.

Plaintiff seeks injunctive relief restoring Martella's to Defendants' pharmacy networks and

preventing further violations of Pennsylvania law, as well as damages on behalf of himself and the

putative class, which, as of now, would include more than 500 individuals who have contacted

Plaintiff's counsel and may eventually include thousands of individuals.  Am. Compl. ¶ 13; (first)

¶ 21; ¶ 129, ECF No. 36.  Plaintiff describes the putative class as follows:

> All individuals residing in Pennsylvania who, as of August 2025, regularly obtained
> prescription medications or related pharmacy services from Martella's Pharmacies
> and whose ability to continue doing so was restricted or terminated by Defendants'
> coordinated network-management decisions.

*Id.* at (first) ¶ 20.  As to questions of law and fact common to the putative class, Plaintiff points to

the following:

> [W]hether Defendants' collective exclusion of Martella's constitutes a breach of
> contract to third-party beneficiaries, interference to prospective economic relations,
> unfair method of competition or deceptive act under Pennsylvania law; whether
> Defendants misled consumers concerning pharmacy availability; etc.

*Id.* at (first) ¶ 22.  Plaintiff asserts that he and the putative class members expressly disclaim any claim arising under the Employee Retirement Income Security Act of 1974 ("ERISA"), and further states that the Amended Complaint asserts "only duties that exist independently of any ERISA-governed plan[.]"  *Id.* at ¶ 7.

As the basis for removal of this case to federal court, Moving Defendants provided the following in their Notice of Removal:

> Defendants state that this Court has original jurisdiction over this  matter, pursuant to: (1) [ERISA], because the claims relate to the administration of benefits under certain  Plaintiffs' employee benefit plans; and (2) the Class Action Fairness Act ("CAFA"), 28 U.S.C. §  1332(d), because this is a putative class action involving at least 100 putative class members, at  least one Defendant is diverse from at least one putative class member, and the alleged amount in   controversy exceeds $5 million.

Notice of Removal 1, ECF No. 1.  More specifically, Moving Defendants assert that this case involves claims to recover benefits and/or enforce or clarify rights under employee benefit plans as defined by 29 U.S.C. § 1002(1) and governed by ERISA, and that federal question jurisdiction exists because Section 502(a) of ERISA preempts state law claims concerning benefit determinations under an ERISA plan.  *Id.* at ¶¶ 12-13.  Moving Defendants argue that, because Plaintiff's claims center on an assertion that Martella's should remain part of the putative class members' in-network plans, Plaintiff's claims arise out of their health insurance plans and necessarily depend upon interpretation of rights and benefits under the plans and are thus preempted by ERISA.  *Id.* at ¶ 18.

With respect to CAFA, Moving Defendants argue that, in addition to or in the alternative to ERISA preemption, each of the requirements for removal under CAFA is met in this case. Initially, the putative class has at least 100 members according to Plaintiff's Complaint, and Plaintiff does not dispute that this requirement has been established.  *See* Am. Compl. ¶ 13, ECF

No. 36. Moving Defendants argue that minimal diversity exists because Plaintiff has pled facts that tend to establish that he and the putative class members are Pennsylvania residents, and that ESI is a citizen of either Delaware or Missouri. *See* Notice of Removal ¶¶ 30-35, ECF No. 1. They further argue that, "[b]ecause at least one putative class member is a citizen of a state different from at least one Defendant, there is minimal diversity among the parties to this case as required under CAFA." *Id.* at ¶ 35. Finally, Moving Defendants assert that the alleged amount in controversy exceeds $5 million because Plaintiff seeks compensatory damages for increased costs and future injuries (including increased emergency department visits, hospitalizations, and potential death), punitive damages, treble damages, injunctive relief, and attorney's fees on behalf of himself and potentially thousands of putative class members. *Id.* at ¶ 42.

## II.  Legal Standard

### A.  Remand

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "The propriety of removal . . . depends on whether the case originally could have been filed in federal court." *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997). Original federal court jurisdiction can be based either on federal question jurisdiction or on diversity of citizenship jurisdiction. *USAA Fed. Sav. Bank v. Belfi*, No. CV 19-3607, 2020 WL 5763585, at *2 (E.D. Pa. Sept. 28, 2020). "Federal courts are courts of limited jurisdiction." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 102 S. Ct. 2099, 2104 (1982). "[T]here is no presumption that they have subject matter jurisdiction to adjudicate a particular case." *Allison*

*v. Chesapeake Energy Corp.*, No. CIV.A. 12-0900, 2013 WL 787257 (W.D. Pa. Jan. 29, 2013) (quoting *Martin v. Wal-Mart Stores, Inc.,* 709 F. Supp. 2d 345, 346 (D.N.J. 2010)).

"When assessing a plaintiff's motion to remand, 'removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" *Belfi*, 2020 WL 5763585, at *2 (quoting *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985)). As such, the Court views all removals with suspicion and heavily favors remand. "[T]he party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

The facts available to the Court for a remand analysis are limited, and heavily favor the allegations of one side over the other. *Angus v. Shiley Inc.*, 989 F.2d 142, 145 (3d Cir. 1993). The Court's inquiry "must focus on the plaintiff's complaint at the time the petition for removal was filed" and "must accept as true all factual allegations in the complaint." *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987).

### B. ERISA Preemption

"Ordinarily, determining whether a particular case arises under federal law turns on the 'well-pleaded complaint' rule." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004). "Under the 'well-pleaded complaint rule, the plaintiff is ordinarily entitled to remain in state court so long as its complaint does not, on its face, affirmatively allege a federal claim." *Pascack Valley Hosp. v. Loc. 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 398 (3d Cir. 2004). The existence of a federal defense, such as preemption, does not appear on the face of the complaint and thus normally does not establish a basis for removal. *See id.*; *Davila*, 542 U.S. at 207.

8

An exception to the well-pleaded complete rule exists where the concept of complete preemption is applicable, and the Supreme Court of the United States has explained:

"When a federal statute wholly displaces the state-law cause of action through complete pre-emption," the state claim can be removed.  This is so because "[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law."  ERISA is one of these statutes.

*Davila*, 542 U.S. at 207–08 (quoting *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003)).

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans."

*Id.* at 208.  "To this end, ERISA includes expansive pre-emption provisions which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'"  *Id.* (quoting *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523 (1981)).

ERISA contains an integrated enforcement mechanism, Section 502(a), 29 U.S.C. § 1132(a), which establishes:

[A] comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.  The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted . . . provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.

*Davila*, 542 U.S. 200, 208–09 (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987)) (internal quotation marks omitted).  "Therefore, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."  *Id.* at 209.  The Supreme Court has further explained:

The pre-emptive force of ERISA § 502(a) is still stronger.  In *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65–66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), the

Court determined that the similarity of the language used in the Labor Management Relations Act, 1947 (LMRA), and ERISA, combined with the "clear intention" of Congress "to make § 502(a)(1)(B) suits brought by participants or beneficiaries federal questions for the purposes of federal court jurisdiction in like manner as § 301 of the LMRA," established that ERISA § 502(a)(1)(B)'s pre-emptive force mirrored the pre-emptive force of LMRA § 301. Since LMRA § 301 converts state causes of action into federal ones for purposes of determining the propriety of removal, *see Avco Corp. v. Machinists*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), so too does ERISA § 502(a)(1)(B). Thus, the ERISA civil enforcement mechanism is one of those provisions with such "extraordinary pre-emptive power" that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metropolitan Life*, 481 U.S., at 65–66, 107 S.Ct. 1542. Hence, "causes of action within the scope of the civil enforcement provisions of § 502(a) [are] removable to federal court." *Id.*, at 66, 107 S.Ct. 1542.

*Id.*

### C. CAFA

Initially, no anti-removal presumption attends cases involving CAFA. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013)). Under CAFA, a federal court has original jurisdiction over actions that satisfy the statute's special diversity and procedural requirements. Specifically, federal district courts have original jurisdiction over class action cases arising under state law when: (1) there are at least 100 members of the class; (2) there is minimal diversity; and (3) the amount in controversy, as aggregated across all individual claims, exceeds the sum or value of $5 million (exclusive of interests and costs). 28 U.S.C. § 1332(d)(2).

A defendant may assert the purported amount in controversy in its Notice of Removal if the Pennsylvania state court complaint does not provide a demand for a specific sum. 28 U.S.C. §1446(c)(2)(B); *see also* Pa.R.C.P. 1021(b) ("Any pleading demanding relief for unliquidated damages shall not claim a specific sum."); *Scaife v. CSX Transp. Inc.*, No. 3:19-cv-60, 2019 WL 3353727, at *12 (W.D. Pa. July 25, 2019). As evidence "of the jurisdictional amount, the Court

may consider the complaint, the notice of removal, and subsequent submissions related to the motion to remand." *Klaphake v. Columbia Gas Transmission, LLC*, No. 17-cv-1359, 2018 WL 1736791, at \*1 (W.D. Pa. Apr. 11, 2018).

For removal actions under 28 U.S.C. §1446, courts within the Third Circuit have applied several tests to determine whether the amount in controversy surpasses the jurisdictional threshold. *See Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 500 (3d Cir. 2014). These three tests include (1) the *McNutt/Samuel-Bassett* preponderance test; (2) the *Red Cab/Samuel-Bassett* legal certainty test; and (3) the *Morgan* legal certainty test. *Id.*

The *McNutt/Samuel-Bassett* test applies where a defendant raises factual arguments in their notice of removal against the plaintiff's purported amount in controversy. *Judon*, 773 F.3d at 504 (quoting *Samuel-Bassett v. Kia Motors Am., Inc.*, 357 F.3d 392, 298 (3d Cir. 2004) and *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 179-80 (1936)). Under this test, the party asserting jurisdiction must justify their position by a preponderance of the evidence standard. *See McNutt*, 298 U.S. at 189 (U.S. 1936). Satisfying the preponderance of the evidence standard has been defined as "proof to a reasonable probability that jurisdiction exists." *Frederico*, 507 F.3d at 196, n.6.

The *Red Cab/Samuel-Bassett* test applies where the alleged facts are uncontested for purposes of calculating the amount in controversy, or where the Court has already made a factual determination under the *McNutt* standard. *Judon*, 773 F.3d at 501. The calculation is, therefore, determined "in whole or in part" by applicable law. *Id.* at 505. The *Red Cab* challenger to jurisdiction has the burden of proving to a legal certainty that the amount in controversy could not exceed the threshold. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938); *see also Frederico*, 507 F.3d at 195.

11

The *Morgan* test applies where a plaintiff's complaint expressly limits the amount in controversy below the threshold to avoid federal jurisdiction. *Morgan v. Gay*, 471 F.3d 469, 474 (3d Cir. 2006). In *Morgan*, the plaintiff stated, in his complaint, that any relief sought was not to exceed the $5 million threshold. *Morgan v. Gay*, Civ. No. 3:06-cv-1371, 2006 WL 2265302, at *1 (D.N.J. Aug. 7, 2006) ("however, the total amount of such monetary relief for the class as a whole shall not exceed $5 million in sum or value."). Under those circumstances, the Third Circuit held that the removing defendant bears the burden to prove to a legal certainty that the complaint exceeds the requisite amount in controversy. *Morgan*, 471 F.3d at 475.

### D. Fed. R. Civ. P. 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The Third Circuit explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

In addition to reviewing the facts contained in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). When a document integral to or relied upon in the complaint is included, the court may also consider that document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Although a district court is not obligated to permit leave to amend before dismissing a complaint in a non-civil rights case, *Wolfington v. Reconstructive Orthopaedic Assocs. II P.C.*, 935 F.3d 187, 210 (3d Cir. 2019), courts generally grant leave to amend unless amendment of the complaint would be inequitable or futile.  *See, e.g., Bachtell v. Gen. Mills, Inc.*, 422 F. Supp. 3d 900, 915 (M.D. Pa. Oct. 1, 2019) (citing *Phillips v. Allegheny Cty.*, 515 F.3d 224, 245 (3d Cir. 2008)).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  The United States Court of Appeals for the Third Circuit has explained:

> Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged."  *Lum v. Bank of America*, 361 F.3d 217, 223–224 (3d Cir.2004).  To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.

*Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

### E.  Injunctive Relief

With respect to the standard for the issuance of a preliminary injunction, the United States Court of Appeals for the Third Circuit has explained:

The decision to issue a preliminary injunction is governed by a four-factor test:

> To obtain an injunction, the plaintiffs had to demonstrate (1) that they are reasonably likely to prevail eventually in the litigation and (2) that they are likely to suffer irreparable injury without relief.  If these two threshold showings are made the District Court then considers, to the extent relevant, (3) whether an injunction would harm the [defendants] more than denying relief would harm the plaintiffs and (4) whether granting relief would serve the public interest.

*K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 105 (3d Cir. 2013) (quoting *Tenafly Eruv Ass'n v. Borough of Tenafly*, 309 F.3d 144, 157 (3d Cir. 2002)).  The requirements for a temporary restraining order are the same as those for a preliminary injunction.  *Saluck*, 2003 WL 559395, at *2.  "Preliminary injunctive relief is 'an extraordinary remedy' and 'should be granted only in limited circumstances.'"  *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (quoting *American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994)).  "[O]ne of the goals of the preliminary injunction analysis is to maintain the status quo, defined as the last, peaceable, noncontested status of the parties."  *Kos Pharms.*, 369 F.3d at 708 (quoting *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990)).

## III.    Discussion

### F.  Renewed Motion for Remand

The Renewed Motion for Remand relies on Plaintiff's assertion of two "new" claims in the Amended Complaint, specifically a third-party beneficiary breach of contract claim and a "tortious interference with prospective economic relations" claim.[7]  Mot for Remand ¶ 4, ECF No. 38. Plaintiff argues that his amendments result in the inapplicability of ERISA preemption because the putative class has now asserted claims arising out of independent state law duties owed by Defendants to the putative class members by nature of Defendants' provider agreements with Martella's, including a duty to not jeopardize the health or safety of plan beneficiaries, a duty to not refuse required services, and a duty to provide transition and continuity of care for 120 days upon non-cause termination of the agreements.  *Id.* at ¶¶ 7-9.  Plaintiff asserts that the putative class does not seek to "recover benefits," enforce rights," or "clarify rights to future benefits" under

---

[7] Plaintiff asserted a claim for "tortious interference with business relations" in his original complaint.  His Amended Complaint reasserts a UTPCL claim that the Court previously found to be preempted.

their health benefit plans, but rather seeks damages and specific performance under the provider agreements between Moving Defendants and Martella's and tort remedies for improper steering/exclusion, and that no interpretation of an ERISA plan is required. *Id.* at ¶¶ 10-13.

In its prior Memorandum Order, the Court raised the issue of potential standing concerns where Plaintiff sought to enforce a contract between Martella's, a non-party, and ESI. In response, Plaintiff provides:

> The Plaintiff respectfully suggests that the Amended Complaint cures this by pleading concrete, Member-facing obligations in the Provider Agreement that expressly run to "Members," placing patients/consumers within the class of intended beneficiaries - the precise the scenario Pennsylvania law seeks to address via third-party beneficiary contract claims.
>
> With a distinct state-law duty and no request to enforce/clarify plan benefits, complete preemption does not lie.

Mot. to Remand ¶¶ 15-16, ECF No. 38. Plaintiff argues that, under the United States Supreme Court's decision in *Rutledge v. Pharmaceutical Care Management Association*, 592 U.S. 80 (2020), a carveout to ERISA preemption exists for state law and contract claims that involve PBM reimbursement, network access, or other commercial arrangements, and that Plaintiff's claims fall under this carveout even though the claims may have an incidental economic impact on health benefit plan costs. *Id.* at ¶¶ 19-23.

With respect to CAFA removal, Plaintiff asserts that, because the putative class consists exclusively of Pennsylvania citizens; because the injuries at issue occurred in Pennsylvania; and because three Defendants are citizens of Pennsylvania, the local controversy exception (28 U.S.C. § 1332(d)(4)(A)) to CAFA applies in this case. Mot. to Remand ¶¶ 24-28, ECF No. 38.

### 1. ERISA Preemption

Under Section 502(a) of ERISA, a participant or beneficiary of an employee benefit plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his

rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a). "If an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." *Davila*, 542 U.S. at 210. It follows that a case is only removable under ERISA preemption where: (1) the plaintiff could have brought their claim under Section 502(a); and (2) no other legal duty supports the plaintiff's claims. *Pascack Valley Hosp.*, 388 F.3d at 400. As noted above, Plaintiff argues that remand is appropriate in this case because his claims arise out of Pennsylvania contract and tort law, as well as the UTPCPL.

Moving Defendants argue that Plaintiff's purported state law claims pertain to benefits that Plaintiff alleges are owed to him and the putative class members under their health benefit plans. Br. in Opp'n 1, ECF No. 40. Moving Defendants assert that, "[n]o matter how Plaintiff chooses to label the claims or how many disclaimers he inserts about the nature of the claims, the crux of the claims remain based upon [Plaintiff's and the putative class members'] alleged right to fill prescriptions at the Martella's pharmacies . . . as in-network providers under the [putative class members' health benefit plans]." *Id.* (footnote omitted). Moving Defendants further assert that the Amended Complaint does not cure the deficiencies discussed in the Court's prior Memorandum Order denying the original motion for remand, and that Plaintiff relies again on the same allegations of harm and seeks the same remedies by way of Amended Complaint. *Id.*

The Court agrees with the Moving Defendants, and finds that Plaintiff's claims are preempted by ERISA. The Court's analysis herein will largely mirror its prior Memorandum Order because, while Plaintiff has renamed his claims, the underlying facts and relief sought remain materially unchanged. As the Court previously noted, a plaintiff "cannot circumvent the

17

preemptive reach of ERISA by artful pleading." *Waldschmidt v. Aetna U.S. Healthcare*, 225 F. Supp. 2d 560, 564-65 (W.D. Pa. 2002) (quoting *Roark v. Humana, Inc.*, Civ. No. 00–2368, 2001 WL 585874 at *1 (N.D. Tex. May 25, 2001)).

Just as in the original complaint, Plaintiff seeks relief on behalf of himself and a group of potentially thousands of individuals based upon purported restrictions in their ability to acquire prescription medications from Martella's through their health benefit plans following Defendant's removal of Martella's as an in-network pharmacy. Each of the putative class members has a health insurance plan with UPMC or Highmark, and Plaintiff takes issue with Defendants' removal of Martella's as an in-network provider under those plans. Plaintiff asserts that Martella's removal will result in significant harm, including increased costs, increased risk of medical harm, and a loss of convenience and choice for the putative class members. In addition to damages caused by the inability to obtain prescription benefits through Martella's, Plaintiff seeks Martella's reinstatement as an in-network pharmacy to prevent future damages.

As the Court previously noted, Moving Defendants have cited to case law that suggests that claims such as those at issue herein are preempted by ERISA. *See Waldschmidt*, 225 F. Supp. 2d at 565 (finding claims completely preempted and explaining: "The only role Aetna could have played is in designating one facility 'in-network' and another facility 'out-of-network.' Decisions of whether certain facilities are in-network or out-of-network involve the administration of benefits or eligibility decisions, not treatment decisions."); *see also Pharm. Care Mgmt. Ass'n v. Mulready*, 78 F.4th 1183, 1198 (10th Cir. 2023), *cert. denied*, No. 23-1213, 2025 WL 1787716 (U.S. June 30, 2025) (addressing express, as opposed to complete, preemption, but explaining: "And either way, ERISA preempts these provisions because a pharmacy network's scope (which pharmacies are included) and differentiation (under what cost-sharing arrangements those pharmacies

18

participate in the network), are key benefit designs for an ERISA plan."); *McKee Foods Corp. v. BFP Inc.*, No. 1:21-CV-279, 2025 WL 968404, at *9 (E.D. Tenn. Mar. 31, 2025) ("This argument, however, ignores the fact that the scope of an ERISA plan's provider network (in this case a pharmacy network) is a key aspect of plan administration: how the plan structures and designs its benefits.").

As the Court previously explained, the status of Martella's, or any pharmacy, as an in-network pharmacy under the putative class members' health benefit plans is a benefit under the plans, and the putative class members clearly seek to enforce and/or clarify their rights under their plans in this lawsuit. Plaintiff himself states that his challenge is to Defendants' network-management decisions, defining the putative class members as: "All individuals residing in Pennsylvania who, as of August 2025, regularly obtained prescription medications or related pharmacy services from Martella's Pharmacies and whose ability to continue doing so was restricted or terminated by *Defendants' coordinated network-management decisions*." Am. Compl. (first) ¶ 20, ECF No. 36 (emphasis added). Accordingly, consistent with the case law cited above, Plaintiff's claims implicate the administration of a health benefit plan, i.e., which pharmacies qualify as "in-network" pharmacies. As such, Plaintiff could have brought this action under Section 502(a), and the first complete preemption requirement is met in this case.

Further, the Court finds that no other legal duty supports Plaintiff's claims. With respect to his breach of contract claim, Plaintiff fails to cite to a single analogous case, i.e., a case where health benefit plan participants sued to enforce a contract between a pharmacy and a PBM in order to restore the pharmacy to in-network status, despite this Court's stated doubts as to the viability of such a claim in its prior Memorandum Order. This likely speaks to the "extraordinary

preemptive power" of ERISA, *see Davila*, 542 U.S. at 209, even in the face of zealous advocacy in the form of artful pleading designed to avoid preemption.[8]

It bears noting that a court is "not bound simply by the carefully crafted allegations" set forth in a complaint, and "may look beyond the face of the complaint to determine whether the plaintiff has artfully pleaded his suit so as to couch a federal claim in terms of state law." *Waldschmidt*, 225 F. Supp. 2d at 564 (quoting *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 274 (3d Cir.2001)). In this case, Plaintiff's claims arise out of, and seek to enforce or clarify, the putative class members' health benefit plans. While Plaintiff's "artfully crafted" allegations might be worded as state law contract or tort claims, the substantive core of his claim remains one concerning the administration of health insurance benefits, that is, whether Martella's is an in-network or out-of-network pharmacy. *See id.* at 565.

As the Court previously explained, if ESI's actions are in breach of its contract with Martella's, it is Martella's, not Plaintiff, who may seek redress for such a breach. The putative class members' avenue for relief is through their health benefit plans, not a contract between Martella's and ESI. Plaintiff's attempt to maintain the "status quo" in the face of ESI's decision to remove Martella's from in-network status is, again, an attempt to modify/control the scope of ESI's pharmacy network. Such relief implicates the administration of a health benefit plan. It bears noting that Plaintiff does not allege that he and the putative class members are forbidden from continuing to fill prescriptions at Martella's, but rather that they are financially impacted by Martella's exclusion from in-network status. It is abundantly clear that network scope, an issue

---

[8] If Plaintiff is correct that he can sue as a third-party beneficiary to contracts between pharmacies, PBMs, and health insurance providers in order to reinstate a pharmacy to in-network status, it would seem that any health benefit plan participant would be able to circumvent the broad preemptive effect of ERISA by relying on such an argument, and the case law cited above respecting preemption where a plaintiff sues over a network's scope would be rendered incorrect because an independent legal duty under state contract law, would have supported the participants' claims.

that plainly falls under ERISA's preemptive reach, is the crux of Plaintiff's claim. State contract law does not support Plaintiff's claims. The Court concludes that Plaintiff's breach of contract claim is thus completely preempted by ERISA.

With respect to his tortious interference claim, Plaintiff relies on a theory that the Defendants have interfered with the ability of Martella's, a non-party, to do business with the putative class members. *See* Br. in Opp.'n 8-10, ECF No. 47. To plead tortious interference under Pennsylvania law, a plaintiff must set forth allegations establishing:

> (1) [T]he existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the defendant's interference.

*I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko*", 500 F. Supp. 3d 380, 425 (E.D. Pa. 2020).

As the Court has repeatedly noted, what Plaintiff and the putative class members truly seek is relief under their own health benefit plans through a determination as to whether ESI's termination of Martella's violated the duties owed to Plaintiff and the putative class members under their plans. The Court finds that, by way of his tortious interference claim, Plaintiff is essentially attempting to sue for tortious interference *on behalf of* Martella's due to the economic loss *Martella's* may suffer from its loss of in-network status. Plaintiff and the putative class members do not have standing to bring such a claim, as they are the "third parties" contemplated under the first pleading requirement for a tortious interference claim, not the "plaintiffs." The issue in this case, as pled by Plaintiff, is whether Defendants' removal of Martella's as an in-network provider complied with the requirements of the putative class members' health benefit

plans.  Thus, the putative class members are suing to enforce or clarify their rights under their health benefit plans, and their tortious interference claim is thus completely preempted by ERISA.

As noted, Plaintiff previously asserted a claim under the UTPCPL, and the Court held that that claim was preempted under ERISA.  Plaintiff provides no basis to revisit that determination herein.

In summary, Plaintiff's claims arise out of their health benefit plans and necessarily depend upon interpretation of the rights and benefits under the plans.  As noted throughout this Memorandum Order, Plaintiff seeks to enforce or clarify his benefits, and no other independent legal duty is implicated.  As such, complete preemption under ERISA applies, and the Renewed Motion for Remand will be denied on that basis.

### 2. CAFA Removal

In the interest of efficiency and economy, the Court did not provide a detailed analysis under CAFA in its prior Memorandum Order given its holdings with respect to ERISA preemption. For the same reason, the Court again foregoes a detailed analysis, but notes the following: Plaintiff's only argument against CAFA jurisdiction is that the local controversy exception applies. Moving Defendants assert that the exception does not apply for the following reasons:

> Plaintiff's Amended Complaint does not establish the requisite elements of the local controversy exception, primarily because Plaintiff does not provide evidence regarding the citizenship of the putative class members, that a local defendant's conduct forms the "significant basis" for the claims asserted, or that the putative class seeks "significant relief" from the local defendant.

Br. in Opp'n 2, ECF No. 40.

Under the local controversy exception, a district court is required to decline to exercise jurisdiction under 28 U.S.C. § 1332(d)(2):

> (A)(i) over a class in which—

22

(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

(II) at least 1 defendant is a defendant—

(aa) from whom significant relief is sought by members of the plaintiff class;

(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

(cc) who is a citizen of the State in which the action was originally filed; and

(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons . . . .

28 U.S.C. § 1332(d)(4)(A).

In its prior Memorandum Order, the Court explained as follows with respect to the potential applicability of exceptions to CAFA jurisdiction:

Plaintiff, who bears the burden of establishing the applicability of a CAFA exception, offers little in arguing the applicability of the "home state" and/or "local controversy" exceptions, and, the Court perceives little value to addressing those exceptions herein. Should this issue become a focus in this litigation in the future following the Court's holding below, the Court anticipates that each party will be prepared to address the issue fulsomely.

Mem. Order 20, ECF No. 23. Despite the Court's statements respecting the previous lack of substantive support for any argument that an exclusion to CAFA jurisdiction applies, and despite

the Court's noted anticipation of more fulsome argument should the issue be raised again, the Court notes that Plaintiff again only offers barebones assertions over five total paragraphs without true substantive argument or citation to case law in support of his assertion of the applicability of the local controversy exception. He further has not filed a reply to the more fulsome arguments raised by the Moving Defendants. The Court finds that the exception does not apply, and, accordingly, CAFA provides an alternative basis for subject matter jurisdiction in this case, further warranting denial of the Motion for Remand.

### B. Motion to Dismiss

Initially, the Court notes that its decision in this matter is not based upon Moving Defendants' argument that Plaintiff's Amended Complaint exceeded the scope of the Court's permitted amendments set forth in the Court's prior Memorandum Order. The Court permitted Plaintiff an opportunity to attempt to remedy the issues discussed in that Memorandum Order. While Plaintiff fell short in that attempt, he did not violate the Court's directive to the extent that dismissal is warranted on that basis alone. For the reasons discussed above, Plaintiff's newly asserted claims remain preempted by ERISA, and will be dismissed for that reason.

In his Renewed Motion for Remand, Plaintiff requests:

> In the alternative -- and to the extent the Court denies the Plaintiff's Renewed Motion for Remand -- the Plaintiff would very respectfully request an opportunity to plead one more time in an effort to raise ERISA and other federal claims in the Western District of Pennsylvania.

Mot. to Remand ¶ 32, ECF No. 38. Despite the fact that Plaintiff disclaimed any claim under ERISA in his Amended Complaint, the Court finds Plaintiff's request to attempt to proceed under ERISA to be a reasonable request, especially in light of Moving Defendants' consistent assertion that Plaintiff's claims should have been brought under ERISA and the Third Circuit's general

interest in adjudication of cases on the merits. *See Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002). Plaintiff will be permitted a final opportunity to amend in this matter.

### C.  PI Motion

Because the Court has dismissed each of Plaintiff's claims, Plaintiff cannot establish, at this time, that he is reasonably likely to prevail eventually in this litigation. At the current juncture, Plaintiff has no pending claim against the Defendants. The PI Motion will be denied on that basis.

### IV.    Conclusion

For the reasons discussed above, the Renewed Motion for Remand will be denied. Moving Defendants' Motion to Dismiss will be granted to the extent that it asserts that Plaintiff's claims are preempted by ERISA. Plaintiff's Amended Complaint will be dismissed without prejudice to Plaintiff filing a final amended complaint asserting a claim under ERISA. The PI Motion will be denied. An appropriate Order of Court follows.

BY THE COURT:

*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: August 6, 2026

cc: All counsel of record